A07A1708. KEY v. THE STATE.
(657 SE2d 273)

MILLER, Judge.

Following a jury trial, Eddie Lester Key was convicted of one count of driving under the influence of alcohol to the extent that he was a less safe driver. OCGA § 40-6-391 (a) (1). Key appeals, contending that the trial court erred by admitting a recording of the 911 call that led to his arrest and by replaying such recording at the jury's request. Key also claims that the trial court erred in denying his motion for a directed verdict. Discerning no error, we affirm.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. In both cases, we review the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. *Dasher v.*

*State*, 281 Ga. App. 326, 328 (1) (636 SE2d 83) (2006). An appellate court neither weighs the evidence nor determines witness credibility, but rather determines only whether the evidence was sufficient for a rational trier of fact to find the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Thomas v. State*, 256 Ga. App. 712 (569 SE2d 620) (2002).

So viewed, the evidence shows that at approximately 4:00 a.m. on March 18, 2006, Gwinnett County 911 dispatch received a call from a man who identified himself as Steven Jones. Jones reported that he was following a silver SUV, later shown to have been driven by Key, that was being driven erratically on Interstate 85 North. Jones remained on the line with 911 dispatch, continually providing updates on the location of the SUV until police officers arrived on the scene and performed a traffic stop.

One of the officers who responded to the call was the supervisor of the Gwinnett County DUI Task Force. That officer spoke to Key, who was driving the SUV, and noted that he had bloodshot eyes, thick and slurred speech, and a strong odor of alcohol on his breath. When asked, Key admitted that he was coming from a party at a fraternity brother's house and that he had consumed three alcoholic drinks. The officer asked Key to perform several field sobriety tests, and Key's performance indicated that he was impaired. After Key was arrested for driving under the influence of alcohol and read Georgia's implied consent notice (see OCGA § 40-5-67.1 (b) (2)), Key refused to submit to the State-administered breath test.

Prior to trial, the State moved in limine to introduce a recording of Jones' 911 call. On the recording, Jones, who did not testify at trial, initially stated that "there is an extremely drunk person on [Interstate] 85 North . . . at Indian Trail," and reported that such person had been "swerving all over the road . . . and stopped in the middle" of the interstate. During the course of the 16-minute recording, Jones repeatedly updated 911 dispatch regarding the location of the SUV and intermittently reported on Key's erratic driving, mentioning several times that the SUV was traveling at least 85-90 miles per hour, swerving between lanes, and inexplicably slowing down or almost stopping on the interstate. After stating that the SUV exited the interstate, Jones reported that he was going to get in front of the SUV to stop it before there was an accident. Jones then audibly exited his car and told Key that he needed to stop driving and stay where he was. Jones thereafter reported that Key had driven off, and Jones stated that "I'm not going to allow this punk to hurt somebody . . . he's drunk." The recording ended as the police arrived at the scene shortly thereafter.

The trial court admitted the recording of the 911 call over Key's objection, finding that it was a nontestimonial statement and admissible under the res gestae exception to the hearsay rule. The recording was played for the jury during the presentation of the State's case-in-chief and replayed following a request by the jury during its deliberations.

1. Key contends that the trial court erred in admitting the recording of the 911 call, claiming (i) that the recording was a testimonial statement and that its admission violated the Confrontation Clause; and (ii) that the recording was inadmissible hearsay that did not qualify under the res gestae exception to the hearsay rule. Key also argues that the trial court abused its discretion in replaying the 911 recording. We disagree.

(a) The Confrontation Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U. S. 36, 53-54 (III) (B) (124 SC 1354, 158 LE2d 177) (2004); see also Ga. Const. of 1983, Art. I, Sec. I, Par. XIV (a criminal defendant "shall be confronted with the witnesses testifying against such person"). The Confrontation Clause does not apply, however, to nontestimonial statements because such statements do not involve the "testimony" of a "witness." *Davis v. Washington*, 547 U. S. 813 (III) (A) (126 SC 2266, 165 LE2d 224) (2006). Given that we find the 911 recording to be a nontestimonial statement, as described below, we hold that its admission was not barred by the Confrontation Clause.

The Supreme Court of Georgia has held "that the determination of whether the recording of a 911 phone call is testimonial should be made on a case-by-case basis." *Pitts v. State*, 280 Ga. 288, 289 (627 SE2d 17) (2006). If the primary purpose of the 911 call "is to establish evidentiary facts, so that an objective person would recognize that the statement would be used in a future prosecution, then that phone call 'bears testimony' against the accused and implicates the concerns of the Confrontation Clause." Id. Where, however, the caller's primary purpose is "to avert a crime in progress or to seek assistance in a situation involving immediate danger, then the statements made during the phone call are not testimonial." Id.

Even where a statement made on a 911 call "[comes] close to providing testimonial evidence," the court must consider whether the primary purpose of the call remained the prevention of immediate harm to the caller or others. See *Pitts*, supra, 280 Ga. at 291 (holding statement that defendant was "wanted" for violating his parole was made to illustrate the danger of the situation, and the primary purpose of the call remained the prevention of immediate harm to the caller).

Here, the primary purpose of Jones' 911 call was to prevent immediate harm to the public, not to establish evidentiary facts for a future prosecution against Key. In calling 911, Jones repeatedly made clear that he believed that the driver of the SUV was "going to cause an accident" or was "going to hurt somebody." His purpose did not become testimonial based on his assertions that the driver of the SUV was "drunk." Instead, such statements reflect his attempt to convey to 911 dispatch the urgency of the situation and to emphasize the need for immediate police assistance. As a result, the trial court did not err in determining that Jones' 911 call was nontestimonial, and that the Confrontation Clause did not prohibit its admission.

(b) Key also claims that the trial court erred in admitting the 911 call because it constituted hearsay that did not qualify as part of the res gestae. See OCGA § 24-3-3 ("Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."). Again, we disagree.

Once a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay apply. *Pitts*, supra, 280 Ga. at 289. "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." (Citation and punctuation omitted.) *Demons v. State*, 277 Ga. 724, 727 (4) (595 SE2d 76) (2004) (finding that nontestimonial statement was admissible under the res gestae exception to the hearsay rule). In Georgia, the res gestae exception to the hearsay rule is frequently used to admit recordings of 911 calls that are made during the commission of a crime. See, e.g., id.; *Sweney v. State*, 265 Ga. App. 21, 22 (1) (593 SE2d 12) (2003); *Kuykendoll v. State*, 278 Ga. App. 369, 371 (3) (629 SE2d 32) (2006).

Whether the res gestae exception should apply depends on factors including (i) the timing of the statement (see, e.g., *Wilbourne v. State*, 214 Ga. App. 371, 373 (1) (448 SE2d 37) (1994) (victim's statement made over three hours after incident was inadmissible as res gestae because it "was created hours after the occurrence and [bore] no mark of 'spontaneity' or other such state of mind undeniably free of conscious device or afterthought") (citation omitted)); (ii) whether the declarant was able to deliberate about the statement (see, e.g., *Walthour v. State*, 269 Ga. 396, 397 (2) (497 SE2d 799) (1998) (statement admissible as res gestae where event precipitating the statement is "sufficiently startling to render inoperative the declarant's normal reflective thought processes" during time interval between the precipitating event and the declaration)); and (iii) whether the declarant was influenced by others prior to making the statement (see, e.g., *Cartwright v. State*, 242 Ga. App. 825, 828 (1) (b) (531 SE2d

399) (2000) (narrative statement delivered by victim after she spoke with her parents and a police officer was not admissible as part of res gestae)). Additionally, there must be some evidence to show that the declarant had personal knowledge regarding the facts delivered in the statement and was not "merely relaying information he had obtained from another person." *Orr v. State*, 281 Ga. 112, 113 (2) (636 SE2d 505) (2006).

Here, the 911 call was made during the pendency of the alleged crime as Jones followed Key in his vehicle, and Jones had no opportunity to deliberate about his statement or to be influenced by others prior to making it. Jones also had personal knowledge of the facts he told to 911 dispatch because he was witnessing Key's erratic driving as he described it, and there was no suggestion that Jones was merely relaying information that he had heard from others. Compare *Dolensek v. State*, 274 Ga. 678, 679 (2) (558 SE2d 713) (2002).

While Key claims that Jones had no personal knowledge that he was "drunk," as Jones twice states during the call, any rational juror would understand that Jones was not claiming any specific knowledge regarding Key's actual consumption of alcohol, but was merely stating that Key appeared to be drunk based on his erratic driving. Indeed, after Jones stated that the driver of the SUV was "extremely drunk," the 911 dispatch operator immediately asked Jones what made him think that the driver was drunk, and Jones responded by describing some of the erratic driving that he had already witnessed. As a result, Jones' comments that Key was "drunk" do not convert the 911 call to a statement that is "merely the expression of opinions or conclusions." *Hill v. State*, 17 Ga. App. 294 (86 SE 657) (1915). Moreover, given that Key was charged with DUI-Less Safe, it was not necessary for the State to prove that he was drunk when driving, and Jones' comments regarding Key being drunk did not go to the ultimate issue of fact to be determined by the jury. *Anderson v. State*, 203 Ga. App. 118, 119 (1) (416 SE2d 309) (1992); compare *Adams v. State*, 231 Ga. App. 279, 285 (5) (499 SE2d 105) (1998) ("Because the jury is the trier of fact, witnesses are generally not allowed to express their opinion as to ultimate issues involved in the case, as this is the province of the jury."). Given the foregoing, the trial court's determination that the 911 call was admissible as part of the res gestae is not clearly erroneous. See *Patel v. State*, 278 Ga. 403, 404-405 (2) (603 SE2d 237) (2004) ("a trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous") (citations and punctuation omitted).

(c) Key also claims that the trial court erred in replaying the 911 recording following the jury's request during its deliberations. It is

within the trial court's discretion to allow a deliberating jury, if it requests to do so, to review a portion of evidence in the defendant's presence. *Tuff v. State*, 278 Ga. 91, 95 (6) (597 SE2d 328) (2004) (no abuse of discretion where trial court allowed recording of 911 call to be replayed at the jury's request). Here, the trial court instructed the jurors not to place any additional weight on the recording merely because they had heard it twice, and the trial court did not abuse its discretion in granting the jury's request.

2. Finally, Key contends that the trial court erred in denying his motion for a directed verdict because the 911 recording was inadmissible hearsay and because the State failed to produce sufficient evidence that alcohol caused him to be a less safe driver.

Given that Key was charged with violating OCGA § 40-6-391 (a) (1), the State was required to show that he was a "less safe driver as a result of alcohol consumed before the driving ended." (Citation and punctuation omitted.) *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998). As discussed in Division 1, supra, the 911 recording was properly admitted as a nontestimonial statement that qualified under the res gestae exception to the hearsay rule. The testimony of a trained police officer that an individual is impaired and a less safe driver, based on his observations at the scene, is admissible as direct evidence against the defendant. Id. In addition, a defendant's admission tending to prove the crime charged is admissible as evidence against him (*Pendergrass v. State*, 245 Ga. 626, 627 (1) (266 SE2d 225) (1980)), as is a defendant's refusal to submit to a State-administered chemical test of his or her blood, breath, urine, or other bodily substances. OCGA § 40-5-67.1 (b) (2).

Here, in addition to the 911 call describing Key's erratic driving, Key admitted that he had consumed three alcoholic drinks prior to driving, he refused to submit to State-administered chemical testing, and the police officer testified that it was his opinion that Key was under the influence of alcohol to the extent that he was a less safe driver. Such evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Accordingly, the trial court did not err in denying Key's motion for a directed verdict. *Overton v. State*, 270 Ga. App. 285, 289 (3) (606 SE2d 306) (2004).

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED JANUARY 25, 2008.

*Robert Kenner, Jr.,* for appellant.

*Rosanna M. Szabo, Solicitor-General, Robby A. King, Assistant Solicitor-General,* for appellee.