## S08A1778. THOMAS v. THE STATE.

(668 SE2d 711)

THOMPSON, Justice.

Charles Randolph Thomas was convicted of malice murder and possession of a firearm during the commission of a crime arising from the shooting death of his former wife, Annette Thomas.[1] On appeal, Thomas asserts that the trial court erred in admitting into evidence hearsay statements made by the victim to several witnesses within minutes after the shooting. Finding no reversible error, we affirm.

The victim had obtained a divorce from Thomas in May 2006. Two months later, she was visiting a friend when she received a cell phone call from Thomas. Her friend recognized Thomas' voice and heard his end of the conversation because he was speaking in a loud,

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship*, 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

[1] The crimes occurred on July 29, 2006. A true bill of indictment was returned on September 12, 2006, charging Thomas with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault, possession of a firearm in the commission of a crime and by a convicted felon, and tampering with evidence. A bench trial commenced on May 14, 2007, and on May 16, 2007, the court sitting as the trier of fact found Thomas guilty of murder, felony murder, aggravated assault, and possession of a firearm in the commission of a crime. On May 17, 2007, Thomas was sentenced to life in prison for malice murder, plus five concurrent years for the weapon offense; the felony murder count stands vacated by operation of law and the aggravated assault charge merged with the malice murder. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). A motion for new trial was filed on June 6, 2007, and was denied on June 11, 2008. A notice of appeal was filed on June 13, 2008. The case was docketed in this Court on July 10, 2008, and was submitted for a decision on briefs on September 1, 2008.

angry manner. After Thomas informed the victim that he was at her home, she told her friend that she was going to drive home to see what he wanted, but that she would return later for dinner.

The victim arrived at her home at about 6:00 p.m. Minutes later, a passerby observed a man fitting Thomas' description sitting on a swing talking to a woman in a car in the driveway of the victim's home. Shortly after 6:00 p.m., the victim's neighbor, Jack Freese, drove by the residence and saw the victim's car parked at an angle with the rear of the vehicle against the side of the house. Freese stopped to investigate and he found the victim sitting up in the driver's seat. She was responsive and he asked her what had happened; she replied, "my ex-husband shot me." Freese immediately called 911 from his cell phone and told the operator that his friend had been shot. He also called neighbors Leon and Nancy Smith who arrived within minutes to assist. Nancy asked the victim what kind of vehicle the perpetrator was driving and the victim responded, a "black Ford . . . pickup" truck. Freese acted as a conduit between the 911 operator, relaying questions from the operator to Leon Smith who in turn posed the questions to the victim; Leon obtained answers from her and repeated those responses to Freese who relayed them to the operator. When the operator asked the identity of the shooter, the victim replied, "Charles Thomas," my "ex-husband." The victim was also asked to describe Thomas' car; she replied that it was a black Ford truck.

Deputy Sheriff Tommy Haynes was the first law enforcement officer to arrive on the scene. He observed the victim sitting in the car bleeding profusely with a large hole in her left eye socket, "fad[ing] in and out" of consciousness. He asked her several times to identify the perpetrator; eventually she was able to reply, "Charles Thomas, my ex-husband."

Emergency medical personnel arrived several minutes later. Paramedics Lorraine Harrison and Darrell Rogers removed the victim from her vehicle and placed her in an ambulance. After an emergency procedure to clear her airway, she was able to speak and answer the paramedics' questions. Both Harrison and Rogers testified that she identified herself by name, and when asked "who did this to you," she replied "Charlie Thomas . . . my ex-husband."

When police investigator Steve Smith arrived on the scene, the victim was being treated in the ambulance and he was unable to speak with her. Investigator Smith did, however, speak to Nancy and Leon Smith who told him that the victim had identified Charlie Thomas as her attacker; and he was told by Deputy Haynes that the perpetrator had been driving a black Ford truck.

A life-flight helicopter arrived and flight paramedic Derrick Moody asked the victim what happened. She stated that she had

been shot by her ex-husband. She was intubated, sedation was administered, and she was transported to Grady Hospital.

Two days later, Investigator Smith visited with the victim at the hospital; she was on a ventilator and unable to communicate. . Eventually life support was terminated and she died of complications from two gunshot wounds to the left side of the head.

Thomas turned himself in to the police the day after the shooting and surrendered his truck. Paint evidence found on the bumper of Thomas' vehicle was consistent with the paint on the victim's car.

1. The evidence was sufficient for a rational trier of fact to have found Thomas guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Thomas asserts that his Sixth Amendment right of confrontation was violated when the trial court considered the hearsay statements of seven witnesses (neighbors Jack Freese, Leon and Nancy Smith; paramedics Lorraine Harrison and Darrell Rogers; and police officers Tommy Haynes and Steve Smith) concerning the victim's identification of the shooter and his vehicle.

In *Crawford v. Washington*, 541 U. S. 36, 53-54 (124 SC 1354, 158 LE2d 177) (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Because only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause . . . [i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U. S. 813, 821 (III) (A) (126 SC 2266, 165 LE2d 224) (2006).

In *Davis*, supra, 547 U. S. at 817, the Court was called upon "to determine when statements made to law enforcement personnel during a 911 call or at a crime scene are 'testimonial' and thus subject to the requirements of the Sixth Amendment's Confrontation Clause."

The facts in *Davis* are closely analogous to the case now before this Court. There, the victim of domestic violence reported to a 911 operator that her former boyfriend was at her home and was beating her. The operator obtained identifying information about the perpetrator, who was later charged with felony violation of a domestic no-contact order. The victim failed to appear at trial, and the police officers who responded to the 911 call had no knowledge of the cause of the victim's injuries. Over objection on Sixth Amendment grounds, the court admitted the recording of the 911 call. The

Supreme Court affirmed the admission of that portion of the 911 conversation in which the victim identified her assailant, ruling that it was not testimonial and therefore not controlled by *Crawford*. The Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, supra, 547 U. S. at 822. The Court determined that "at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis(h) or prov(e)' some past fact, but to describe current circumstances requiring police assistance." *Davis*, supra, 547 U. S. at 827.

In the present case, the trial court followed the rationale of *Davis* in determining that the victim's statements to the neighbors were nontestimonial in that they were elicited as part of a 911 call and were made while the incident was still ongoing and the perpetrator was at large. We agree that the statements identifying Thomas as the assailant were nontestimonial and not subject to the Sixth Amendment's Confrontation Clause as the victim was speaking about events "as they were actually happening" (emphasis omitted), *Davis*, supra, 547 U. S. at 827, and the primary purpose of the questioning "was to enable police assistance to meet an ongoing emergency." Id. at 828. See also *Hester v. State*, 283 Ga. 367 (4) (659 SE2d 600) (2008) (statements made by victim to police officer and paramedic within minutes of the occurrence were necessary to resolve a present emergency and were not testimonial); *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006) (pre-dating *Davis* — contents of a 911 call made by victim who did not testify at trial were not testimonial when the call was made for the purpose of thwarting an ongoing crime or seeking immediate assistance); *Key v. State*, 289 Ga. App. 317, 320 (1) (a) (657 SE2d 273) (2008) (where the primary purpose of a 911 call was to convey "the urgency of the situation and to emphasize the need for immediate police assistance," the statements were not testimonial).

Once a determination is made that a statement is nontestimonial in nature, "normal rules regarding the admission of hearsay

apply." *Pitts*, supra, 280 Ga. at 288. Thus, the statements were admissible if they qualified under one of Georgia's hearsay exceptions. The trial court admitted the victim's statements to the seven witnesses under the res gestae and necessity exceptions.

The res gestae exception, codified at OCGA § 24-3-3, provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."

> Whether the res gestae exception should apply depends on factors including (i) the timing of the statement . . . (ii) whether the declarant was able to deliberate about the statement . . . and (iii) whether the declarant was influenced by others prior to making the statement. . . . Additionally, there must be some evidence to show that the declarant had personal knowledge regarding the facts delivered in the statement and was not "merely relaying information he had obtained from another person." [Cit.]

*Key*, supra, 289 Ga. App. at 320 (1) (b). "In Georgia, the res gestae exception to the hearsay rule is frequently used to admit recordings of 911 calls that are made during the commission of a crime." Id.

In the present case, the victim directly identified Thomas as her assailant to Freese, Leon Smith, paramedics Harrison and Rogers, and Deputy Haynes within minutes of the shooting, each of whom testified as to those declarations; Nancy Smith testified that the victim identified the perpetrator's vehicle. Given the victim's grave injuries and intermittent loss of consciousness it is unlikely that she had the ability to deliberate about her identification of the attacker or to be influenced by others, and it is without dispute that she had personal knowledge of the facts she related. A trial court's determination that evidence is sufficiently informative and reliable as to warrant being considered as part of the res gestae will not be disturbed on appeal unless the ruling is clearly erroneous. *Patel v. State*, 278 Ga. 403, 404 (2) (603 SE2d 237) (2004). We hold that the victim's prompt identification of Thomas and his vehicle were spontaneous utterances without the intervention of reflective thought, and were admissible under the res gestae exception. Id. Finding no abuse of the trial court's discretion in admitting the hearsay statements, we affirm.[2]

The analysis as to Investigator Smith differs. He arrived at the

---

[2] Having determined that the statements are admissible under the res gestae exception, we need not determine whether they are also admissible under the necessity exception or as

crime scene after the victim had been placed in the ambulance and was no longer able to communicate. Over a hearsay objection, Investigator Smith was permitted to testify that he was advised by Leon and Nancy Smith that the victim had identified Thomas as her attacker and by Deputy Haynes that she had given a description of the perpetrator's vehicle. The trial court ruled that it would not consider the statements for the truth of the matter asserted, and the witness then went on to explain the nature of the investigation. At a bench trial such as this, "the trial court is presumed to have separated admissible evidence from inadmissible evidence and considered only the former in reaching its judgment." *Watson v. State*, 274 Ga. 689, 691 (3) (558 SE2d 704) (2002). Even assuming arguendo that admission of Investigator Smith's testimony was error, see generally *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984) (admission of the testimony of the investigating officer relating his conversation with a third party "for the limited purpose of explaining the officer's conduct in the continuing investigation," was error), such error was harmless. As noted previously, the identification of Thomas and his vehicle by other witnesses was properly admitted under the res gestae exception. Thus, the testimony of Investigator Smith was merely cumulative, and it is highly probable its admission did not contribute to the verdict. See *Harris v. State*, 279 Ga. 522 (3) (615 SE2d 532) (2005); *Teague*, supra at 537 (3).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 27, 2008.

*Donna A. Seagraves, Mary Erickson*, for appellant.
*Richard K. Bridgeman, District Attorney, Robin R. Riggs, Assistant District Attorney, Thurbert E. Baker, Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.

---

dying declarations, as the State also contends. See generally *White v. State*, 276 Ga. 583 (1) (a) (581 SE2d 18) (2003) (not necessary to consider additional hearsay ground where statements admissible under another exception).