A10A1309. LANDAVERDE v. THE STATE.
(699 SE2d 816)

MIKELL, Judge.

After a jury trial, Jose Walter Landaverde was found guilty of voluntary manslaughter as a lesser included offense of murder, felony murder, two counts of aggravated assault, and possession of a firearm or knife during the commission of a felony. Landaverde received an aggregate sentence of 25 years to serve. On appeal, Landaverde does not challenge the sufficiency of the evidence. Rather, he asserts as error the trial court's admission into evidence of his videotaped statement and a 911 recording. Finding no error, we affirm.

Construed in favor of the verdict, the record here shows that Estella Perez, Landaverde's live-in girlfriend, died after receiving multiple stab wounds to her torso. Detective G. Lorenzo of the

---

[27] (Citations and punctuation omitted.) Id.
[28] Id.

Gwinnett County Police Department testified at the *Jackson-Denno* hearing that he investigated Perez's homicide, arrested Landaverde, and interviewed Landaverde at the Gwinnett County police head-quarters. Lorenzo further testified that he spoke to Landaverde in Spanish; that he determined that Landaverde could read and write; that he read Landaverde his *Miranda* rights in Spanish using a form provided by his department; that the form included a waiver of rights, including the right to have an attorney present; that Landaverde signed the form; that he asked Landaverde if he understood what had been read and Landaverde replied that he did; and that he then asked Landaverde if he wanted to talk to him, at which point Landaverde gave his account of what happened between him and the victim.[1] According to Lorenzo, Landaverde never asked to have an attorney present.

1. In his first enumeration of error, Landaverde contends that his statement should have been excluded because it was obtained after he requested an attorney. In support of his argument, Landaverde refers us to excerpts from the trial transcript, from which he contends the trial court should have inferred that he was requesting that an attorney be present. We disagree.

The first colloquy upon which Landaverde relies occurred during Lorenzo's direct examination and follows:

> Q. Did he (Landaverde) ever ask to see any family members or anything like that prior to any questioning?
> A. Before we even started the interview he had made a comment that he doesn't have anybody or no family, before I even read the rights.

Landaverde also refers us to the following excerpt from his video-taped interview, which transpired before he was *Mirandized*:

> Q. And your date of birth?
> A. 11/07/75. I don't have anyone here.
> Q. What?
> A. I don't have anybody here. I don't have anyone to look out for me.
> Q. You don't have family here?
> A. No.

Landaverde maintains that based on these excerpts, the trial court

---

[1] Landaverde stated that he attacked the victim with a knife, after he became upset while they were fighting.

should have concluded that he was requesting an attorney, but he cites no authority in support of his argument.

> In order for a suspect to properly invoke his right to counsel during a custodial interrogation, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.[2]

Succinctly stated, the request must be unambiguous to require law enforcement officers to stop their questioning.[3] Our Supreme Court has concluded that statements such as "I might need a lawyer" and "I will still talk to my lawyer tomorrow" and a suspect's request to talk to someone about who was going to be his lawyer were not clear requests for counsel requiring the police to cease questioning.[4] It follows then that Landaverde's statements, which were far more ambiguous, likewise invoked no such right. Accordingly, the trial court did not err in admitting Landaverde's videotaped statement.

Although not enumerated separately as error, Landaverde also argues that the videotaped statement should have been excluded because several minutes of it were missing, which rendered it unreliable. The record shows that Lorenzo was cross-examined about the missing portions of the transcript. Landaverde provides no proffer as to whether the missing portions of the statement were material, and does not argue that he was somehow harmed as a result of the missing portions of the statement. Most importantly, Landaverde cites no authority in support of his argument. We therefore deem this contention abandoned.[5]

2. Next, Landaverde argues that the 911 recording introduced into evidence violated his Sixth Amendment right to confront witnesses against him. We disagree.

The 911 operator testified that the caller identified himself and reported a medical emergency with his neighbor; that she dispatched an ambulance and police; that the police arrived while the caller was still on the phone with her; and that the caller identified the perpetrator as "Walter." The 911 recording was played for the jury, but it was not transcribed for the record.

---

[2] (Citation and punctuation omitted.) *Manley v. State*, 287 Ga. 338, 347 (7) (698 SE2d 301) (2010) (denial of motion to suppress statement reversed where defendant stated he would talk to detectives but wanted a lawyer with him).

[3] *Moore v. State*, 272 Ga. 359, 360 (2) (528 SE2d 793) (2000).

[4] Id. See *Jordan v. State*, 267 Ga. 442, 443-444 (1) (480 SE2d 18) (1997); *Luallen v. State*, 266 Ga. 174, 177-178 (4) (465 SE2d 672) (1996).

[5] See *Copeland v. State*, 273 Ga. App. 850, 853 (1) (b) (616 SE2d 189) (2005).

In *Crawford v. Washington*,[6] the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who [does] not appear at trial unless he [is] unavailable to testify, and the defendant [has] had a prior opportunity for cross-examination."[7]

In *Davis v. Washington*,[8] however, the Supreme Court specifically addressed the question of whether a statement identifying the perpetrator that was made to law enforcement personnel during a 911 call was considered "testimonial."[9] The Court ruled that the statement was not testimonial, and consequently, even though the caller did not testify at trial, the admissibility of the statement was not controlled by *Crawford*.[10] It explained as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[11]

Following the rationale in *Davis*,[12] our Supreme Court similarly held in *Thomas*[13] that statements elicited as part of a 911 call were nontestimonial in nature as they were made while the incident was still ongoing and the perpetrator was at large.[14] The Court reasoned that the statements were not testimonial because "the [caller] was speaking about events as they were actually happening and the primary purpose of the questioning was to enable police assistance to meet an ongoing emergency."[15]

"Once a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay

---

[6] 541 U. S. 36, 53-54 (III) (B) (124 SC 1354, 158 LE2d 177) (2004).

[7] *Thomas v. State*, 284 Ga. 540, 542 (2) (668 SE2d 711) (2008).

[8] 547 U. S. 813 (126 SC 2266, 165 LE2d 224) (2006).

[9] Id. at 823 (III) (A).

[10] Supra.

[11] (Footnote omitted.) *Davis*, supra at 822 (II).

[12] Id.

[13] Supra.

[14] Id. at 543 (2).

[15] (Citation and punctuation omitted.) Id., citing *Davis*, supra at 827, 828 (III) (A).

apply."[16] The res gestae exception, which is codified at OCGA § 24-3-3, provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." In the instant case, the caller identified Landaverde while or soon after the incident occurred in an attempt to secure police assistance and was still on the phone with the 911 operator when the police arrived. Thus, the trial court correctly admitted the recording as part of the res gestae.[17] Accordingly, this enumeration of error also fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 2, 2010.

*Horatio O. Edmondson, Frederick R. J. Jackson*, for appellant.
*Daniel J. Porter, District Attorney, John A. Warr, Assistant District Attorney*, for appellee.

---

[16] (Citation and punctuation omitted.) *Thomas*, supra at 543-544 (2).

[17] See *Glover v. State*, 285 Ga. 461, 462 (2) (678 SE2d 476) (2009) (911 calls made by bystanders to report a shooting shortly after it occurred were nontestimonial and thus were admissible under the res gestae exception); *Thompson v. State*, 291 Ga. App. 355, 358 (2) (662 SE2d 135) (2008) (statements during calls made to seek assistance in situations involving immediate danger are not testimonial). Compare *Wright v. State*, 285 Ga. 57, 60 (3) (a) (673 SE2d 249) (2009) ("statements [made] in response to a question by law enforcement after the emergency had already ended and were reflective of past events ... were testimonial in nature") (citations omitted).