297 Ga. 112
FINAL COPY

S15A0450.  HAGER v. THE STATE.

BENHAM, Justice.

Appellant Kelvin Hager was convicted by a jury of malice murder and other crimes related to the shooting death of victim Rashad Sampson.[1] Appellant now appeals the trial court's denial of his motion for new trial.  For the reasons set forth below we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial shows that on the evening of December 28, 2009, victim Rashad Sampson was

---

[1] The crimes occurred on December 28, 2009.  On May 4, 2010, a DeKalb County grand jury returned an indictment charging appellant with malice murder, felony murder (armed robbery), armed robbery, felony murder (aggravated assault), aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.  Appellant was tried January 3-6, 2012, and a jury found him guilty on all counts.  On February 24, 2012, the trial court entered the following sentence:  The two felony murder guilty verdicts and the aggravated assault guilty verdict merged with the malice murder guilty verdict, and appellant was sentenced to imprisonment for life without parole for the malice murder guilty verdict; imprisonment for life for the armed robbery guilty verdict, to be served concurrently with the sentence of life imprisonment without parole, and imprisonment for a term of five years for the guilty verdict on the possession count, to be served consecutively with the life sentences.  Appellant filed a timely motion for new trial on March 22, 2012, on the general grounds.  On August 29, 2014, appellant's appellate counsel filed an amended motion for new trial, and on that same date counsel filed a motion to strike the amended motion for new trial, along with a motion for the trial court to rule upon the original motion brought on the general grounds, which were granted.  After a hearing on the original motion for new trial, the trial court denied the motion by order dated September 24, 2014.  Appellant filed a timely notice of appeal on October 2, 2014.  On November 19, 2014, the case was docketed in this Court to the January 2015 term for a decision to be made on the briefs.

found lying on a residential street in DeKalb County, having been shot. Witnesses who lived on the street where Sampson was discovered testified they investigated the situation in response to hearing gunshots nearby. They testified that Sampson was thrown out of a Blue Dodge Magnum which then sped down the cul-de-sac street. One of the neighbors yelled to Sampson to be still and play dead, and the car soon returned on its way out of the neighborhood and stopped next to Sampson, apparently so the driver could determine his condition. The driver, a young black male, was alone in the car. Once the driver left the scene, neighbors approached Sampson, who kept saying, "I'm going to die." He told witnesses that his car had been stolen.

When an officer came to the scene in response to 911 calls, the officer was able to identify Sampson from information in his wallet. The officer testified at trial that Sampson "had a great sense of dying and kept asking is he going to die, is he going to die." The paramedics who accompanied Sampson to the hospital testified that Sampson spoke to them and was able to provide his name, birth date, and social security number. The paramedics testified that they understood Sampson to identify the shooter as someone named either Kelvin or Calvin. He told them he was shot with a .45 caliber weapon and that he could

2

not believe "that his friend shot him." He further told them he and his friend or co-worker were riding in a car and that the friend or co-worker shot him and threw him out of the vehicle. One of the paramedics testified that Sampson was absolutely certain of who shot him and by what type of gun. Upon arriving at the hospital, he asked one of the nurses whether he was going to die. When the nurse asked him who shot him she first thought he said Calvin, but Sampson clearly corrected her, telling her his attacker's name was Kelvin, and that he worked with Kelvin at Target. Sampson died from his gunshot wounds on January 2, 2010.

In fact, appellant worked with Sampson at a Target store in Atlanta, and appellant was the only person named Kelvin employed at that store. On the night of the shooting, Sampson told his girlfriend by telephone that he was meeting appellant to take him home, and he later told his mother by telephone that he was waiting with appellant at the apartment of appellant's girlfriend because she had locked him out of her apartment. Cell phone records placed appellant and Sampson near each other and in the vicinity of the place where Sampson was shot around the time of the shooting. Earlier in the afternoon of the shooting, appellant and Sampson were visiting Delbert Samuel, at which

time appellant showed Samuel a .45 caliber handgun he said he had just purchased at the Candler Road Pawnshop. A representative of the pawn shop confirmed appellant's purchase, using records kept by the pawn shop. Sampson's blue Dodge Magnum automobile was recovered from an apartment complex, and when police searched it, they found blood, bullet holes, and a cartridge casing from a .45 caliber weapon. Forensic evidence established that all four rounds recovered from the victim's body were fired by the same .45 caliber gun and that the victim was shot at close range. Appellant left Georgia after the shooting and was arrested in Maryland in February 2010. Appellant's motion for new trial on the general grounds was denied.

1. Appellant was tried in 2012, under Georgia's old Evidence Code, and all statutory references in this opinion are to the former Code.[2] Appellant does not dispute that the statements the victim in this case made to those who testified about them at trial qualify as dying declarations under former OCGA § 24-3-6,[3] which provided: "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed

---

[2] The new Evidence Code became effective January 1, 2013 (Ga. L. 2011, p. 99, § 1/HB 24).

[3] This provision is now codified at OCGA § 24-8-804 (b) (2).

4

him, shall be admissible in evidence in a prosecution for the homicide." Appellant also acknowledges that the testimony reciting the victim's dying declarations was admitted without objection. Nevertheless, appellant attempts to draw a distinction between the dying declarations statute, which states that such declarations "shall be admissible in evidence" in a homicide prosecution, and the types of evidence admissible pursuant to former OCGA § 24-3-2.[4] Pursuant to the terms of former OCGA § 24-3-2: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence not as hearsay but as original evidence." According to appellant, even though the victim's dying declarations were admissible, they remained hearsay because the dying declarations statute does not specify they are not hearsay and that they are admissible as original evidence, unlike the examples of evidence set forth in OCGA § 24-3-2. Consequently, appellant asserts the victim's dying declarations lacked probative value and should not be considered in the analysis of whether the evidence against appellant was

---

[4] This provision has been replaced by the general rules relating to hearsay, now codified at OCGA § 24-8-801 et seq.

5

sufficient to affirm his convictions.

We find this assertion to be tortured logic and reject it. It is well settled that a statement which qualifies as a dying declaration pursuant to the parameters set forth in former OCGA § 24-3-6 is admissible as an *exception* to hearsay. See *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004); *McAllister v. State*, 246 Ga. 246, 248 (1) (271 SE2d 159) (1980); *Campbell v. State*, 11 Ga. 353 (1852). As such, the evidence is not simply admissible, though not probative of the issue of guilt; it is admissible as an exception to hearsay for the jury to weigh and consider as evidence of guilt. See *Walton*, supra, 278 Ga. at 435 (once a prima facie showing for the admission of a dying declaration is made, it is for the jury to determine the credibility of the witness' testimony). The dying declaration of the victim is frequently cited as part of the trial evidence considered by this Court in determining whether the evidence was constitutionally sufficient to authorize the trier of fact to find the defendant guilty pursuant to the familiar standard set forth in *Jackson v. Virginia*.[5] See, e.g., *Thomas v. State*, 284 Ga. 540, 541-542 (1) (668 SE2d 771) (2008); *Woodard v. State*, 278 Ga. 827, 828 (1) (607 SE2d 592) (2005); *Austin v. State*,

_____

[5] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

6

268 Ga. 602 (1) (492 SE2d 212) (1997). Accordingly, testimony regarding the victim's dying declarations is properly included in this Court's determination of the sufficiency of the evidence, as a whole, to support the convictions.

2. Contrary to appellant's arguments otherwise, we conclude that the evidence, as a whole, summarized above, was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the offenses for which he was convicted. See *Jackson v. Virginia*, supra.

Judgment affirmed. All the Justices concur.

Decided May 11, 2015.

Murder. DeKalb Superior Court. Before Judge Barrie.

Michael W. Tarleton, for appellant.

Robet D. James, Jr., District Attorney, Gerald Mason, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Depeuty Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General, for appellee.