**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 28, 2017**

# In the Court of Appeals of Georgia

A17A0209. GREGORY v. THE STATE.

BETHEL, Judge.

Richard Gregory appeals from the denial of his motion for a new trial following his conviction on a single count of aggravated battery for which he was sentenced to twenty years imprisonment and ordered to pay a fine. On appeal, Gregory alleges that the trial court erred by admitting into evidence and publishing to the jury a recording of a 9-1-1 call that was placed shortly after the incident giving rise to his arrest, and by admitting certain statements by a witness over the defendant's hearsay objection. He also alleges that his trial counsel was ineffective by failing to object to the admission of the 9-1-1 call recording. Finally, he argues that the trial judge improperly commented on the evidence in the case when instructing the jury as to

what it would hear when the 9-1-1 call was played in court. For the reasons set forth below, we affirm his conviction.

On appeal, the defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citations omitted). So viewed, shortly after midnight one evening, Karen Andrews was at the home of a friend when she placed a call to Gregory asking that he come to the house to pick her up. He arrived a few minutes later, and the two of them drove back to Andrews' house where they spent the night.

The next afternoon, a neighbor of Andrews heard screaming outside her home. The neighbor walked out of her house and ran down the street, finding Andrews sitting on the ground. Andrews was hysterical and crying, her eye was swollen, and her face was bleeding. At that time, the neighbor also saw a man leave Andrews' house, get into a car parked in Andrews' driveway, and drive away. The neighbor later testified that Andrews told her that the man had beaten her up.[1]

---

[1] This statement was admitted over the defense's hearsay objection. The trial court ruled that Andrews' statement to the neighbor could be admitted as an excited utterance.

A few minutes later, Andrews placed a 9-1-1 call to the county police department.[2] Andrews remained on the line with the operator until police arrived, at which time the responding officer observed injuries to her face. Following further investigation by the police, including an interview of Andrews, Gregory was arrested and charged with a single count of aggravated battery.[3]

Before trial, Gregory moved to suppress the recording of Andrews' 9-1-1 call. The court denied the motion but ruled that certain statements made by Andrews in the call placing Gregory's character at issue would be redacted from the recording prior to trial.

Andrews was not available to testify at the trial,[4] and the State did not call anyone from the 9-1-1 center to testify regarding her call. Instead, the redacted 9-1-1 recording was played before the jury in conjunction with testimony from the police officer who arrived at Andrews' house following the call. The recording was accompanied by several documents relating to the call, including a records

---

[2] The contents of this 9-1-1 call are discussed in more detail in Division 1(a) of this opinion.

[3] *See* OCGA § 16-5-24.

[4] The record indicates that Andrews passed away in December 2014 from causes unrelated to the incident giving rise to this criminal action and appeal.

3

certification from the 9-1-1 center and a copy of the dispatch report (known as a CAD report).[5]

Although the State had provided each of these documents and a copy of the recording to Gregory as part of pre-trial discovery, the State did not provide Gregory with separate notice of its intent to introduce the 9-1-1 recording as a business record pursuant to Rule 902 (11). Gregory did not challenge the admissibility of the recording and the documents as business records.[6]

The trial judge, prior to playing the recording, instructed the jury that it was about to hear an audio recording of the "alleged victim" on the 9-1-1 call. Gregory made no objection to this instruction at trial. Later testimony by a police investigator

---

[5] Portions of the redacted 9-1-1 call were also played to the jury as part of the State's closing argument and again during deliberation upon request by the jury.

[6] At the hearing on Gregory's motion for a new trial, the State admitted to the trial court that it did not provide separate notice to the defense that it planned to introduce the 9-1-1 recording as a business record. The State argued to the trial court that, by failing to object to introduction of the recording on that basis, Gregory had waived the notice requirement. At the same hearing, Gregory's trial counsel indicated that he could not think of a strategic reason for why he would not have moved to exclude the recording of the 9-1-1 call pursuant to Rule 902 (11). Gregory's trial counsel also indicated at the motion hearing that he did not have a strategic reason for failing to object to the admission of the 9-1-1 recording on the grounds that it contained inadmissible hearsay and that the State failed to authenticate the caller's voice.

4

indicated that Karen Andrews was the person who placed the 9-1-1 call, but this information was not shared with the jury through witness testimony before the recording of the call was played in court.

Gregory was convicted of a single count of aggravated battery. The trial court denied of Gregory's motion for a new trial and this appeal followed.

1. Gregory first asserts that the trial court erred by denying his motion to suppress the 9-1-1 recording, arguing that admission of the call violated Gregory's Sixth Amendment right to confront the caller as a witness because at least some of the statements made on the call were testimonial in nature. Gregory also argues that the recording should have been suppressed because statements made by Andrews on the call were not admissible under any hearsay exception. For the reasons set forth below, we affirm the trial court's denial of Gregory's motion to suppress.

(a) In *Crawford v. Washington*,[7] the United States Supreme Court held that statements made by witnesses outside the courtroom that are testimonial in nature are barred from admission into evidence by the Confrontation Clause unless the witness is unavailable at trial and the defendant had a prior opportunity to cross-examine the witness. A subsequent decision by the United State Supreme Court, *Davis v.*

_____

[7] 541 U.S. 36, 53-54 (124 SCt 1354, 158 LE2d 177) (2004).

*Washington*,[8] applied this principle to the admission of a victim's 9-1-1 conversation in which she identified the defendant as her assailant. In *Davis*, the Supreme Court held that statements made to the 9-1-1 operator while the defendant was in the home of the caller in violation of a protective order were not testimonial. *Davis*, 547 U. S. at 826-28. The Supreme Court reasoned that statements made to the operator identifying the defendant were made while the incident was still unfolding (as opposed to a description of past events) and that the primary purpose of the colloquy with the 9-1-1 operator was to obtain police assistance to intervene in "an ongoing emergency" where physical harm to the caller was possible. *Id*.

As the Georgia Supreme Court subsequently noted,

[i]n *Michigan v. Bryant*,[9] the Supreme Court gave further guidance on this subject. The court referenced the "primary purpose" test, but cited additional factors to determine whether a statement was made to meet an ongoing emergency, including the nature of the emergency, the formality of the exchange, and the probable intent of the parties judged by an objective observer.

*Hatley v. State*, 290 Ga. 480, 485 (722 SE2d 67) (2012).

---

[8] 547 U.S. 813, 826-27 (126 SCt 2266, 165 LE2d 224) (2006).

[9] 562 U.S. 344, 360 (131 SCt 1143, 179 LE2d 93) (2011).

Here, we agree with the trial court that the statements on the call were not testimonial in nature. The 9-1-1 call was placed several minutes after Gregory had driven away from Andrews' house, and her statements on the call described in some detail her injuries and the incident that occurred between her and Gregory that afternoon. However, on the call, Andrews provided Gregory's physical description, described his vehicle, identified his residence, and stated the location Andrews believed him to be driving toward after he left her house. She also indicated to the operator that she believed Gregory was sending someone to her house to kill her.

This case is closely analogous to the Georgia Supreme Court's decision in *Thomas v. State*, 284 Ga. 540, 542-45 (2) (668 SE2d 711) (2008). In *Thomas*, the victim was attacked by the defendant in a vehicle parked in front of her home. *Id*. at 541. She was found by a neighbor who placed a 9-1-1 call on her behalf in which the neighbor relayed information from the victim identifying her attacker and the source of her injuries. *Id*. The neighbor also provided a description of the assailant's vehicle. *Id*. The Georgia Supreme Court ruled that these statements were not testimonial, in that they were made "while the incident was still ongoing and the perpetrator was at large." *Id*. at 543.

Here, like in *Thomas*, even though the 9-1-1 call in this case was made several minutes after Gregory had fled the premises, the statements made by Andrews were not testimonial because they were made while Gregory remained at large and because they provided information that could aid authorities in his capture.[10] We therefore affirm the trial court's determination that statements made by Gregory in the recording were not testimonial.

(b) Gregory also argues that the trial court erred in concluding that the statements in the call were admissible as an excited utterance and under what it refers to as the "necessity exception." From the record below, it appears that the trial court determined that the contents of the call could be admitted pursuant to Rule 803 (2) as an excited utterance and pursuant to Rule 804 (a) (4), which applies to unavailable witnesses. Gregory, however, fails to cite to the record or draw out any authority

---

[10] *Cf. Pitts v. State*, 272 Ga. App. 182, 187 (612 SE2d 1) (2005), where we upheld the admission of a 9-1-1 call in which the victim called the police to request that they come to her home to remove the defendant, who had broken in. This Court ruled that the victim's statements "were made while the incident was actually in progress . . . were not made for the purpose of establishing or proving a fact regarding some past event, but for the purpose of preventing or stopping a crime as it was *actually occurring*." *Id*. (emphasis supplied). *Thomas* appears to extend *Pitts* by suggesting that information provided by the victim that is relevant to the assailant's capture as he flees in the immediate aftermath of a physical attack is not testimonial in nature.

8

supporting his argument on this point. Instead, he baldly asserts that the State failed to lay the proper foundation for admission of the evidence. Because of the dearth of information provided to this Court in support of this argument, pursuant to Court of Appeals Rule 25 (c) (2), we deem the argument abandoned and do not consider it here. *See Slmbey v. State*, 288 Ga. App. 717, 718 (655 SE2d 223) (2007) (finding abandonment of issues on appeal where appellant did not support his enumeration of error with citations to record or applicable case law).

2. Gregory next argues that the trial court erred in overruling his hearsay objection to the testimony of Karen Andrews' neighbor regarding statements the neighbor heard Andrews make following the incident. At trial, the neighbor testified that Andrews told her that "he beat me up and . . . thought he was her friend, that he was different, but that he was like all the others. He just wanted sex. And when [she] turned him down, he beat her up."

Gregory objected to the admission of this testimony on hearsay grounds. The State responded that Andrews' statements recounted by the neighbor were admissible as an excited utterance pursuant to Rule 803 (2). The trial court admitted this testimony over Gregory's objection as an excited utterance.

9

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." OCGA § 24-8-803 (2). As the Georgia Supreme Court has explained, "[i]n order to qualify as an excited utterance, an event precipitating the statement must have been sufficiently startling to render inoperative the declarant's normal reflective thought processes and the declarant's statement must have been the result of a spontaneous reaction, and not the result of reflective thought." *Walthour v. State*, 269 Ga. 396, 398 (497 SE2d 799) (1998) (footnote omitted). Decisions by the trial court with regard to admission of evidence pursuant to a hearsay objection are reviewed for abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014).

Here, the record shows that the neighbor heard screaming outside her home which prompted her to go outside. She walked down the street and found Andrews sitting on the ground. When she came to Andrews, she found her crying and hysterical and saw that Andrews' eye was swollen and that she was bleeding. It was at this time that Andrews made the statements to the neighbor that were recounted at trial.

Although, as Gregory argues, the record at trial does not establish the exact time line between the conclusion of Andrews' violent encounter with Gregory and her subsequent statements to her neighbor, the neighbor's testimony establishes both Andrews' demeanor at the time the statements were made and the source of her distress. As the Georgia Supreme Court has discussed, "[w]hile the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance." *Robbins v. State*, 300 Ga. 387, 390-91 (793 SE2d 62) (2016) (citation omitted). Moreover, "[t]estimony that the declarant appeared . . . upset, combined with a reasonable basis for emotional upset, will usually suffice for admission under the excited utterance exception." *Daniel v. State*, 285 Ga. 406, 410 (677 SE2d 120) (2009) (citation and punctuation omitted). Accordingly, on the record before us, we cannot say that the trial court abused its discretion in admitting Andrews' statements to her neighbor as an excited utterance.

3. Gregory argues that his trial counsel was ineffective by failing to object to the admission of the 9-1-1 recording, the CAD report, and the business record

11

certification on the ground that the State failed to file pre-trial notice of its intent to introduce the recording as a business record pursuant to Rule 803 (6) and Rule 902 (11). We disagree with this contention because Gregory cannot show a reasonable probability that the outcome of his case would have been different had a separate notice been provided.

Rule 902 (11) provides, in relevant part, that "[a] party intending to offer a record into evidence under this paragraph shall provide written notice of such intention to all adverse parties and shall make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge such record and declaration[.]"

To establish ineffective assistance of counsel under *Strickland v. Washington*,[11] the defendant must show that the trial counsel's performance was deficient and that there is a reasonable possibility that the trial result would have been different if not for the deficient performance.

In this case, without regard to his trial counsel's performance, Gregory cannot satisfy the second prong of the *Strickland* analysis because he has not shown how the result of his trial would differ had he received a separate notice. Although the State

---

[11] 466 U.S. 668, 688 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984)

12

admits that it did not provide Gregory with a separate document indicating its intent to introduce the documents as business records, it is not clear how Gregory was harmed by the failure to receive this notice. What is clear is that Gregory received copies of the 9-1-1 recording and its supporting documentation (which certified the recording and the CAD report as business records in compliance with Rules 803 (6) and 902 (11)) as part of pre-trial discovery. He filed a motion in limine to suppress the 9-1-1 recording and later objected that the State had not properly laid the foundation for the admission of the 9-1-1 recording into evidence.

Although Gregory's trial counsel did not raise any objection to admission of the evidence as a business record, the State's disclosure of the evidence and the ensuing pretrial proceedings afforded Gregory the opportunity to raise any objections he had to the recording and its accompanying documents. We find that this satisfies Rule 902 (11)'s broad notice requirement.

Accordingly, as Gregory cannot show that the trial court would have been likely to exclude the 9-1-1 recording had he received separate notice of the State's intent to introduce it–or, more importantly, that his trial result would have been different had his counsel objected on the basis of the notice requirement–he has not satisfied the second prong of the *Strickland* analysis. We therefore agree with the trial

court that Gregory has not shown ineffective assistance of counsel with respect to his trial counsel's failure to raise the notice requirement.

4. Gregory next argues that the trial court erred in admitting the recording of the 9-1-1 call because it was not a business record and because the State failed to authenticate the caller's voice prior to playing the recording to the jury. He also argues that admission of the recording was in error because it contained hearsay. Finally, Gregory maintains that his counsel was ineffective by failing to object to the admission of the recording on these bases.

(a) We agree with the trial court that Gregory did not receive ineffective assistance when his trial counsel failed to object to the admission of the 9-1-1 recording because the recording could properly be admitted as a self-authenticating business record under Rules 803 (6) and 902 (11). Here, the recording of the call was made by the county 9-1-1 center, and it was accompanied in the record by a written declaration from the 9-1-1 operations center certifying that it met the requirements of Rules 803 (6) and 902 (11). Gregory points us to no authority indicating that a recording of a 9-1-1 call by the operations center is not a record made as part of that agency's regularly conducted activity or that it somehow otherwise fails to meet the requirements of Rules 803 (6) or 902 (11).

14

Likewise, we find Gregory's attempts to analogize 9-1-1 recordings to accident or incident reports made in anticipation of potential litigation unpersuasive. The redacted version of the 9-1-1 recording played for the jury contains no additional information other than the conversation that unfolded between Andrews and the operator. More importantly, it does not contain the verbal or written impressions of an investigator or statements by any other parties made after the incident in question, that might undermine the recording's credibility. This is in contrast to the cases cited by Gregory in which a third party, unconnected to the incident in question prepares a report which includes statements in addition to the witness's own testimony of what occurred. *Cf., e.g., Palmer v. Hoffman*, 318 U. S. 109, 113-15 (63 SCt 477, 87 LE 645) (1943) (finding the accident report prepared by the train company based on a later interview of the train conductor by an agent from regulatory agency was not admissible as business record, as the record was "calculated for use essentially in the court, not in the business.").

We therefore agree with the trial court that the 9-1-1 recording was admissible as a business record pursuant to Rules 803 (6) and 902 (11), and, as such, "additional extrinsic evidence of authenticity" other than the certification by the records

custodian was not required. Accordingly, Gregory's counsel was not ineffective in failing to raise an objection to the admission of the recording on that basis.

(b) Gregory's arguments regarding admission of the 9-1-1 recording pursuant to exceptions to the hearsay rule mirror the points raised in regard to his motion to suppress, which we addressed in Division 1(b) of this opinion, *supra*. As noted, we have deemed this argument abandoned pursuant to Court of Appeals Rule 25 (c) (2).

5. Gregory argues that the trial judge improperly commented on what the evidence in the case had proven when the judge instructed the jury that it would be hearing a 9-1-1 call made by "the alleged victim" in the case. We disagree.

At trial, Gregory objected to the introduction of the recording, arguing that Andrews' voice had not been properly authenticated. The trial court overruled this objection and instructed the jury regarding the 9-1-1 recording, as follows:

> [Y]ou're about to hear an audio recording of a telephone call of the alleged victim in this case. As you hear the audio recording, you will hear the interviewing 911 operator make certain statements to the alleged victim. I caution you that the declarations or statements of the 911 operator are not evidence, and you should not consider such statements as evidence unless such statements are proven to you by other competent evidence.

16

Gregory did not raise any objection to the wording of this instruction at trial, but on appeal he argues that the judge's reference to the caller as the "alleged victim" relieved the State of its affirmative burden to prove that Karen Andrews placed the 9-1-1 call. We disagree.

OCGA § 17-8-57 governs commentary by the trial court regarding the evidence before the jury and what has or has not been proven in the case. Because this case came to trial in June 2015, a prior version of this statute was in effect[12] and provided, in relevant part, that:

> It is error for any judge in a criminal case, during its progress . . . to express or intimate his opinion as to what has or has not been proved . . . . Should any judge violate this Code section, the violation shall be held by the . . . Court of Appeals to be error and the decision in the case reversed, and a new trial granted with such directions as the . . . Court of Appeals may lawfully give.

*See* Ga. L. 1985, p. 1190, §1. Under this version of the statute, a judge's commentary on the evidence constitutes plain error, and counsel's failure to contemporaneously

---

[12] *See Smart v. State*, 299 Ga. 414, 423 (4) (788 SE2d 442) (2016) (applying former version of OCGA § 17-8-57 because that version of the statute was in effect at the time of defendant's trial).

17

object to such comment, as occurred here, does not preclude appellate review. *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010).

In order to violate former OCGA §17-8-57 and necessitate reversal, the trial court's comments must pertain to a disputed issue of fact in the case. *Gardner*, 286 Ga. at 634-35. Here, we note that at no point in the entirety of these proceedings has Gregory disputed that Andrews was the alleged victim in this case. Rather than arguing that Andrews did not suffer the injuries alleged by the State, Gregory's theory of the case was that someone else (or some cause other than a physical attack by him) was the cause of her injuries. Although Andrews' status as the alleged victim in the case is not in dispute, Gregory invites this Court to believe that the identity of the caller is a fact at issue such that the judge's identification of the voice on the call as that of the victim was an impermissible comment upon the evidence. We decline this invitation.

Gregory's argument that, by identifying the caller as the alleged victim, the trial court impermissibly relieved the State of its burden to establish facts authenticating the caller's voice is also baseless. The trial judge had already ruled on the admissibility of the recording (a ruling which did not necessitate any further action by the State to make the call admissible). *See*, *supra*, Division 4(a). Gregory cannot

now attack that prior ruling by suggesting that the judge's comment on a fact which is not in dispute–that Andrews was the alleged victim in the case or that she was the caller on the 9-1-1 recording–is "an opinion as to what has or has not been proven." The purpose of OCGA § 17-8-57 is to prevent the trial court from invading the province of the jury, either by expressing its views on the credibility of a witness[13] or by indicating what facts it believes have or have not been established by the evidence.[14] *Callaham v. State*, 305 Ga. App. 626, 627 (1) (700 SE2d 624) (2010). In this case, neither occurred. The judge's statement did not express an opinion as to the veracity of the statements made in the call or as to Andrews' credibility, nor did the judge's statement indicating that the alleged victim (which, by that point, was known by the jury to be Andrews)[15] was the person who placed the 9-1-1 call resolve any factual dispute that would aid the jury in determining whether Gregory had committed

---

[13] *See, e.g., Murphy v. State*, 290 Ga. 459, 460-61 (a) (722 SE2d 51) (2012) (finding plain error under OCGA § 17-8-57 where trial court referred to witness as a "good detective" who used his "best efforts" in the case).

[14] *See, e.g., Patel v. State*, 282 Ga. 412, 414-15 (651 SE2d 55) (2007) (finding plain error under OCGA § 17-8-57 where trial court indicated that venue was proper in the prosecuting county even though that was disputed by the defendant).

[15] After some brief pleasantries, the State began its opening argument in the case by saying, "The victim in this case is Karen Andrews."

the charged offense. The only dispute seems to have been whether the State had laid the proper evidentiary foundation in order to admit the recording. As this is a question for the judge, not the jury to resolve, OCGA §17-8-57 does not apply. We thus find no error in these statements by the trial court.

6. Gregory finally argues that the trial court erred by publishing the redacted version of the 9-1-1 call recording to the jury. Here, the record makes clear that the redactions were made at the trial court's instruction so as to eliminate from the recording any extraneous statements made by Andrews that impermissibly addressed Gregory's character. The Georgia Supreme Court has made clear that, where the proper foundation for a business record has been laid and the court has deemed it admissible as such, portions of the original version of the business record containing information which the court deems to be inadmissible can be redacted at the court's direction so that only the admissible portions are presented to the jury as evidence. *See Turner v. State*, 273 Ga. 340, 344 (4) (541 SE2d 641) (2001) (allowing introduction of redacted version of report where full report was deemed admissible as a business record). No additional authentication of the record, as redacted, is required. Accordingly, we find no error in the trial court's decision to publish a redacted version of the 9-1-1 call to the jury.

20

*Judgment affirmed. McFadden, P. J., and Branch, J., concur.*