295 Ga. 161
FINAL COPY

S14A0491.  WELLS v. THE STATE.

NAHMIAS, Justice.

Appellant Sephus Wells was convicted of felony murder based on aggravated assault with a deadly weapon and possession of a firearm during the commission of a felony, in connection with the shooting death of Corey Sinkfield.  On appeal, he contends that his trial counsel provided ineffective representation and that the trial court violated OCGA § 17-8-57 by making an impermissible comment to the jury.  We affirm.[1]

1.     Viewed in the light most favorable to the verdict, the evidence presented at trial showed as follows.  On the night of November 21, 2003, Appellant, holding a semi-automatic handgun, approached Sinkfield in a busy

---

[1]  The crimes occurred on November 21, 2003.  On June 30, 2006, a Fulton County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.  At a trial held from November 5 to 9, 2007, the jury acquitted Appellant of malice murder but found him guilty of the remaining charges.  The trial court sentenced Appellant to life in prison for felony murder and a consecutive term of five years for the firearm conviction; the aggravated assault verdict merged.  Appellant filed a motion for new trial on November 30, 2007, which he amended with the assistance of new counsel on March 11, 2013.  After a hearing, the trial court entered an order on May 28, 2013, denying the new trial motion.  Appellant filed a timely notice of appeal, and the case was docketed in this Court for the January 2014 term and submitted for decision on the briefs.

parking lot at an apartment complex for the elderly and disabled. Appellant began yelling at Sinkfield, who was unarmed, saying, "Talk that s--t that you were talking," and, "I don't hear you saying anything now." Gary York, a two-time gunshot victim, was nearby. York knew Appellant and Sinkfield and positioned his wheelchair between them in an attempt to defuse the situation. York was able to convince Appellant to leave, but as Appellant walked away, he turned back and yelled, "It ain't over, motherf----r." York persuaded Sinkfield to stay in the parking lot for a few minutes, but then Sinkfield walked off in the same direction that Appellant went, toward the apartment complex up the street where both Appellant and Sinkfield lived. Less than ten minutes later, two gunshots rang out from that direction.

Derrick Gardner testified that he saw Appellant shoot Sinkfield with a handgun across the street from the complex where the two men lived. Gardner, a crack cocaine addict at the time, lived in the same complex and knew Appellant and Sinkfield. According to Gardner, they were arguing at the top of a flight of concrete steps when Appellant fired his gun once into the air, telling Sinkfield that he needed "to get somewhere." When Sinkfield did not flinch or move, Appellant walked straight toward him and swung at his face with the gun,

2

which fired again. Sinkfield fell into some bushes and then down the steps. As Appellant walked to the bottom of the steps, he said, "I'm tired of you young punks . . . trying me." Gardner addressed Appellant by name and exclaimed, "Look what you just did!" Appellant turned around, saw Sinkfield lying on the steps bleeding profusely, and said, "Oh, s--t," before running away. Gardner, who had an outstanding warrant for his arrest, also ran away, telling two women that he passed to call 911 because a young man had just been shot in the head.

Sinkfield died at the scene. The medical examiner concluded that he was killed by a single gunshot to the head. The bullet entered through Sinkfield's left cheek and was fired from within a few inches of his face; however, there was no contact wound at the point of entry. Sinkfield had no bruising on his face but had scrapes on his face and hands consistent with a fall on concrete steps.

Two days after the shooting, Gardner told the police that he saw Appellant shoot Sinkfield and identified Appellant in a photographic lineup. The next day, a single 9mm shell casing was recovered from the crime scene, but the murder weapon was never found. At the time of Appellant's trial, Gardner was incarcerated, and he testified that Appellant had warned him in jail not to testify.

3

The defense theory was that Appellant was not present at the shooting and that the State offered more evidence that Gardner killed Sinkfield than that Appellant killed him, emphasizing that Gardner was the only person that the other witnesses saw fleeing the scene immediately after the gunshots.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009). ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant contends first that his trial counsel provided inadequate representation because counsel failed to recognize that an involuntary manslaughter conviction was authorized by the evidence, did not discuss with Appellant a possible jury instruction on involuntary manslaughter, and failed to request such an instruction.

(a) To establish that his trial counsel was constitutionally ineffective,

4

Appellant was required to prove both deficient performance by counsel and resulting prejudice. See Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show that his lawyer's performance was deficient, Appellant had to demonstrate that the lawyer performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688. This is no easy showing. As the United States Supreme Court has explained,

> [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time . . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U. S. at 689-690 (citations omitted). Accord Humphrey v. Nance, 293 Ga. 189, 191 (744 SE2d 706) (2013).

To these ends, the law recognizes a "strong presumption" that counsel performed reasonably, and the defendant bears the burden of overcoming this

presumption. See Strickland, 466 U. S. at 689. To carry this burden, Appellant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. See Nance, 293 Ga. at 192. In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Reed v. State, 294 Ga. 877, 882 (___ SE2d___) (2014).

Even when a defendant has proved that his counsel's performance was deficient in this constitutional sense, he also must prove prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U. S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." Harrington v. Richter, 562 U. S. ___ (131 SCt 770, 178 LE2d 624) (2011) (citation and punctuation omitted). Rather, the defendant must demonstrate a "reasonable probability" of a different result, which, the United States Supreme Court has explained, is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694.

In all, the burden of proving a denial of effective assistance of counsel is

a heavy one. See Richter, 562 U. S. at ___. Appellant has not met that burden.

(b) The premise of Appellant's claim is that his trial counsel should have pursued the defense theory that the jury could find Appellant guilty of involuntary manslaughter as a lesser included offense of murder. See OCGA § 16-5-3 (a).[2] This theory would have required counsel to argue, and the jury to believe, that the shooting was not intentional (in which case it would be malice murder), although Appellant acknowledges that the shooting was at least reckless conduct precluding a complete accident defense. See OCGA § 16-2-2 (excluding an accident defense where there was criminal intention or criminal negligence); Reed v. State, 279 Ga. 81, 86 (610 SE2d 35) (2005). In addition, an involuntary manslaughter theory would have required counsel to argue, and the jury to believe, that Appellant's use of a loaded gun to strike at Sinkfield was reckless conduct but that Appellant did *not* use the gun as a "deadly weapon" (which would be the felony of aggravated assault, see OCGA § 16-5-

---

[2] OCGA § 16-5-3 (a) says:
A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years.

21 (a) (2)) — even though, in fact, the gun fired and killed Sinkfield, the medical evidence indicated that Sinkfield's face was not bruised by a blow and that the gun was fired from a few inches away rather than on contact, Appellant had just fired one shot into the air while confronting Sinkfield, and even a gun used as a bludgeon may be deemed a deadly weapon. See Arthur v. State, 275 Ga. 790, 791 (573 SE2d 44) (2002).

While such a convoluted and poorly supported theory may be conceivable, trial counsel would have had to present it, without losing all credibility, against the backdrop of the core defense theory that Appellant was not even at the crime scene and that someone else was the shooter — a theory based on the claim of complete innocence that Appellant maintained to his counsel throughout the trial, and one with a plausible basis in the evidence, if the jury could be convinced not to believe Gardner, who certainly was an impeachable witness.[3] For these reasons, it was not "patently unreasonable" for trial counsel not to concoct this complicated theory, to convince Appellant that it was the preferable way to proceed, and to seek an involuntary manslaughter instruction based on

---

[3] Accordingly, when the trial court asked about lesser charges at the charge conference, Appellant's counsel said, "All or nothing. All or nothing today, judge," and later added, "Obviously – We're saying we weren't at the shooting scene."

the theory.  <u>Reed</u>, 294 Ga. at 882.  See also <u>McKee v. State</u>, 277 Ga. 577, 579-580 (591 SE2d 814) (2004) (holding that trial counsel's performance was not deficient where he failed to request a charge of involuntary manslaughter as a lesser included offense of murder that would have conflicted with the "all-or-nothing" defense strategy that counsel, after consultation with the defendant, had decided to pursue).  Several cases from the Eleventh Circuit support this conclusion.  See <u>Hunt v. Commr., Ala. Dept. of Corrections</u>, 666 F3d 708, 727 (11th Cir. 2012) (holding that the defendant's attorneys were not ineffective in failing to pursue an additional defense theory that would have been inconsistent with counsels' strategy of denying the defendant's guilt entirely); <u>Dill v. Allen</u>, 488 F3d 1344, 1357 (11th Cir. 2007) ("[C]onstitutionally sufficient assistance of counsel does not require presenting an alternative —  not to mention unavailing or inconsistent —  theory of the case."); <u>Williamson v. Moore</u>, 221 F3d 1177, 1180-1181 (11th Cir. 2000) (finding no ineffective assistance where a reasonable attorney could have deemed an alternative theory "inconsistent with [the defendant's] own description of the killing").

In sum, the "decision not to request a jury charge on a lesser included offense in order to pursue an 'all-or-nothing' defense is a matter of trial

9

strategy," and reasonable trial strategy, whether wise or unwise, generally does not amount to ineffective assistance of counsel. <u>Davis v. State</u>, 287 Ga. App. 786, 788 (653 SE2d 104) (2007). Furthermore, even if we were to assume that trial counsel's performance was deficient as alleged, Appellant did not show resulting prejudice because, given the evidence in this case, there is not a reasonable probability that the outcome of his trial would have been more favorable even if the jury had been given an involuntary manslaughter instruction.

3.     During the jury charge, the trial court explained (with emphasis added):

> A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon. To constitute such an assault, actual injury to the alleged victim need not be shown. It is only necessary that the evidence show beyond a reasonable doubt that the defendant attempted to cause a violent injury to the alleged victim. The State must also prove as a material element of aggravated assault, as alleged in this case, that the assault was made with a deadly weapon. A firearm when used as such is a deadly weapon as a matter of law. Intent to kill is not an element of aggravated assault with a deadly weapon. A deadly weapon need not be introduced. It is not necessary for the State to admit into evidence *the deadly weapon used by the defendant* in order for the defendant to be found guilty of aggravated assault.

Appellant did not object to this jury instruction when it was given, and

10

indeed, at the charge conference, his trial counsel said, "Obviously, the firearm is a deadly weapon. I have no objection to that." Trying to circumvent both this lack of contemporaneous objection and the strict limits that normally apply to "plain error" review of unobjected-to jury instructions, see OCGA § 17-8-58 (b),[4] Appellant seeks refuge in OCGA § 17-8-57, which says:

> It is error for any judge in any criminal case, . . . in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below . . . .

Alleged violations of OCGA § 17-8-57 are subject to a sort of "super-plain error" review; not only may they be raised on appeal without any objection at trial, but, if sustained, they automatically result in reversal without consideration of whether the error caused any actual prejudice. See Murphy v. State, 290 Ga. 459, 461 (722 SE2d 51) (2012). See also Collier v. State, 288 Ga. 756, 763 (707 SE2d 102) (2011) (Nahmias, J., concurring specially).

---

[4] An appellate court may, but is not required, to reverse a trial court for plain error if the instructional error was not affirmatively waived by the defendant, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. See Inman v. State, 294 Ga. 650, 655 (___ SE2d ___) (2014). See generally State v. Kelly, 290 Ga. 29, 32-33 (718 SE2d 232) (2011).

11

Citing OCGA § 17-8-57, Appellant now argues that by saying "the deadly weapon used by the defendant," the trial court improperly expressed its opinion that the gun was a "deadly weapon" and that Appellant was the person who used it to kill the victim. But this mischaracterizes the trial court's statement, which was drawn verbatim from a case holding that "[i]t is not necessary for the State to admit into evidence the deadly weapon used by the defendant in order for the defendant to be found guilty of aggravated assault." Lattimer v. State, 231 Ga. App. 594, 595 (499 SE2d 671) (1998). In context, it is clear that the court was referring to "the defendant" in the generic sense and not to Appellant. It is also clear in context that "deadly weapon" was a reference to an element of the crime that the State had to prove, not a factual assertion by the court. This enumeration of error has no merit.

Judgment affirmed. All the Justices concur.

Decided May 5, 2014.

Murder. Fulton Superior Court. Before Judge Baxter.

Steven E. Phillips, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.