In the Supreme Court of Georgia


Decided:   October 6, 2014


S14A0880. FREEMAN V. THE STATE.


HINES, Presiding Justice.

Eddie Lee Freeman appeals from his convictions and sentences for malice

murder and possession of a firearm during the commission of a crime in

connection with the death of Terrance Devaris Moore.  For the reasons that

follow, we reverse.[1]

Construed to support the verdicts, the evidence showed that Freeman and

[1]The crimes were committed on September 12, 2006.  On January 23, 2007, a Richmond County grand jury indicted Freeman, together with Byron Lorenza Elliard and Tordell Lafranze Stokes, for malice murder and possession of a firearm during the commission of a crime; Elliard was also charged with possession of a firearm by a convicted felon.  Freeman was tried alone before a jury June 9-12, 2008 and found guilty on both counts.  On July 10, 2008, he was sentenced to life in prison for the malice murder, and a consecutive term of five years in prison for possession of a firearm during the commission of a crime.  Freeman filed a notice of appeal on August 5, 2008; he also filed, pro se, an "Omnibus Motion," which included motions for in forma pauperis status, the appointment of appellate counsel, and "to amend pending motion for new trial."  The appeal was docketed in this Court pursuant to the notice of appeal on May 24, 2010, and on June 22, 2010, this Court remanded the case to the trial court for consideration of Freeman's requests for in forma pauperis status and the appointment of appellate counsel.  An amended motion for new trial was filed on August 27, 2013, and a second amended motion for new trial was filed on August 29, 2013.  The motion for new trial, as amended, was denied on September 27, 2013. Freeman filed a notice of appeal on October 2, 2013, and the appeal was docketed in this Court for the April 2014 term and submitted for decision on the briefs.

two other men went to a motel room to buy illegal drugs; Freeman was in possession of a .38 caliber revolver. Moore was in the motel room with three other men. There was a disagreement over the price of the drugs, and an argument ensued; Moore locked the door to the motel room and placed his hand in his pocket and appeared to begin to remove a handgun from it. A gunshot was then fired, followed by a number of other gunshots, and the lights of the room went out; the door to the room became inoperative and those inside the room began to leave through a broken window. Freeman fired his .38 revolver several times, and was himself twice struck by bullets. He was subsequently taken to a hospital. Moore was also struck twice by bullets, and died en route to the hospital. The autopsy produced two .38 bullets recovered from his body, at least one having been fired from close range; the bullets proved to have been fired from either a .38 special or .357 magnum revolver, and to have been fired from the same weapon as another bullet found at the crime scene. Freeman's .38 revolver was not found, and it was established that bullets of other calibers were fired at the crime scene.

1. The evidence was sufficient to prove beyond a reasonable doubt that Freeman was guilty of the crimes of which he was convicted. See *Jackson v.*

2

*Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Freeman gave three oral statements to investigating law enforcement officers; one statement was given in the hospital emergency room shortly after the shooting; one was made at the sheriff's office several hours later; and the third occurred two days later.   Only the third statement was made after the giving of *Miranda*[2] warnings and Freeman argued to the trial court that evidence contained within the first two statements should be excluded as he was in custody at the time they were made and thus *Miranda* warnings were required to be given.  See *Durden v. State*, 293 Ga. 89, 95 (3) (744 SE2d 9) (2013).  Prior to trial, and after a *Jackson v. Denno*[3] hearing, the trial court ruled the two statements admissible.

At trial, when the State sought to introduce the recording of the first interview, Freeman objected, and the State responded that the trial court had "already found at the previous hearing that the statement was freely and voluntarily given and as well that no *Miranda* warnings were necessary as the defendant was not a suspect at that time."  The court simply overruled the

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

[3] *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

objection and admitted the recorded statement. When the State sought to introduce a recording of the second interview, Freeman again objected and the State responded that "the issue of voluntariness has already been addressed and [the State] would request the court allow this into evidence." The court responded: "All right. I find that the statement was freely and voluntarily given as previously ruled. I'll admit it over the objection of the defense." Freeman contends that this constituted an improper comment on the evidence by the court, violating OCGA § 17-8-57,[4] and necessitating a new trial. This is correct.

> Determining the voluntariness and, consequently, the admissibility of a defendant's statement in a criminal case is a two-step process. Initially, the trial court addresses the issue outside the presence of the jury and, if the statement is determined to be voluntary, it is admitted for the jury to make the ultimate determination as to its voluntariness and, thus, its probity as inculpatory evidence. Having made the determination that a statement is voluntary, the trial court should simply admit it into evidence and not inform the jury of its ruling. A trial court's ruling before the jury on the voluntariness of a defendant's statement, even when coupled with an explanation as to the roles played by the trial court and the jury when the voluntariness of a defendant's statement is questioned, amounts to a violation of OCGA § 17–8–57.

---

[4] OCGA § 17-8-57 reads:
It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

4

*Chumley v. State*, 282 Ga. 855, 857 (2) 655 SE2d 813) (2008) (Citations and punctuation omitted.) The court's response: "I find that the statement was freely and voluntarily given," clearly violated OCGA § 17-8-57, and would have even if the trial court had explained the court's and the jury's separate roles. Id.

Although the State contends that the trial court's articulation was made during a mere colloquy with counsel regarding an evidentiary ruling, see *Bryant v. State*, 268 Ga. 664, 667(8) (492 SE2d 868) (1997), the transcript reveals nothing other than that the remark was made in the jury's presence. And, it is of no moment that Freeman did not raise a contemporaneous objection to the trial court's articulation; as this Court has explained,

> [a]lleged violations of OCGA § 17-8-57 are subject to a sort of "super-plain error" review; not only may they be raised on appeal without any objection at trial, but, if sustained, they automatically result in reversal without consideration of whether the error caused any actual prejudice. [Cits.]

*Wells v. State*, 295 Ga. 161, 167 (3) (758 SE2d 598) (2014). Accordingly, a new trial is necessary.

3. Freeman contends that the trial court also erred in making the initial determination that his first two statements were freely and voluntarily made because he was in custody at the time each was made, but he was not given the

5

benefit of *Miranda* warnings.[5]   A person is considered to be in custody and "*Miranda* warnings are required when a person 'is (1) formally arrested or (2) restrained to the degree associated with a formal arrest.' [Cit.]   Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary.  [Cit.]" *Robinson v. State*, 278 Ga. 299, 301 (2) (602 SE2d 574) (2004).   "On appeal, the issue is whether the trial court was clearly erroneous in its factual findings regarding the admissibility of the statements. [Cit.]" *Jackson v. State*, 272 Ga. 191, 193 (3) (528 SE2d 232) (2000).

According to the evidence presented at the *Jackson v. Denno* hearing, at the time of the first statement, Freeman was in the hospital being treated for his gunshot wounds; he was not under arrest; he was not restrained in any way; and if he had wished, he would have been allowed to leave if his medical situation so permitted.  The second interview took place in an interview room at the sheriff's office; the testimony of the interviewing officers was that Freeman

---

[5] Freeman's enumeration of error also encompasses his third statement, given after he received *Miranda* warnings, but his arguments in this Court detail only the first two statements.  At trial, Freeman asserted that the third statement was tainted by the alleged illegality of the first two. See generally, *Rashid v. State*, 292 Ga. 414, 419-420 (4) (737 SE2d 692) (2013).

voluntarily came there at their request, although they were not able to state whether he arranged his own transportation or was given a ride in an official vehicle; in any event, that is a circumstance which would not necessarily indicate that he was in custody. See *Scott v. State*, 281 Ga. 373, 375-376 (2) (637 SE2d 652) (2006). Again, the evidence was that Freeman was not restrained and was free to leave, and one officer testified that Freeman did, in fact, leave after the interview. Based on the evidence presented at the *Jackson v. Denno* hearing, the trial court did not err in determining that Freeman was not in custody at the time he made his first two statements, and that these statements were voluntary and properly admissible. *Durden*, supra at 95-96.

4. At the *Jackson v. Denno* hearing, the investigating officers who conducted the hospital interview both testified that Freeman was not at that time a suspect, but rather was interviewed as a potential victim or witness. In his motion for new trial, Freeman asserted that his trial counsel failed to provide effective representation in that, at the *Jackson v. Denno* hearing, counsel did not introduce the interview sheet filled out by the investigating officers at the time of the hospital interview, which showed a checked box indicating that Freeman was a "suspect" rather than a "subject," "victim," or "witness." In order to

7

prevail on a claim of ineffective assistance of counsel, Freeman must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

At the hearing on the motion for new trial, trial counsel testified that he was aware of the interview form indicating that Freeman was denominated a

suspect at the time of the hospital interview, but chose not to introduce it at the *Jackson v. Denno* hearing because he did not believe that the trial court would suppress the statement, and thought that it would be more valuable to use the form to attack the credibility of the testifying officers at trial, which counsel did. Counsel also testified that he was aware that case law had established that merely being considered a suspect did not mandate that *Miranda* warnings were necessary. And in this regard, counsel's understanding of the law is correct.

> Whether a police officer focused his unarticulated suspicions upon the individual being questioned is of no consequence for *Miranda* purposes. [Cit.] This is so because *Miranda* was fashioned to redress "'the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions'" when the questioning commenced. [Cit.] "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." [Cit.] Thus, the proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest. [Cits.]

*McAllister v. State*, 270 Ga. 224, 227-228 (1) (507 SE2d 448) (1998).

Freeman fails to show that counsel's performance was deficient. "When, as here, a strategic choice is made after thoughtful consideration, a claim of ineffective assistance of counsel is not supported. Decisions relating to strategy

9

and tactics must not be judged by hindsight or the ultimate result of the trial." *Browder v. State*, 294 Ga. 188, 194 (4) (751 SE2d 354) (2013) (Citations and punctuation omitted.)

5. The remainder of Freeman's enumerations of error are unlikely to recur on retrial and we thus decline to address them. See *Boring v. State*, 289 Ga. 429, 435 (3) (711 SE2d 634) (2011).

Judgments reversed. All the Justices concur.