**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 26, 2016**

# In the Court of Appeals of Georgia

A16A0293. MUTHU v. THE STATE.

MERCIER, Judge.

Gajendra Muthu appeals his convictions for driving under the influence of alcohol, driving under the influence of alcohol-less safe, and failure to maintain lane. He raises three enumerations of error, arguing that the trial court erred by improperly commenting on the credibility of his expert witness, in violation of OCGA § 17-8-57; by restricting the testimony of his expert as to the effects of acid reflux disease on the results of breath tests; and, when faced with a deadlocked jury, by failing to declare a mistrial, reading the *Allen* charge, and refusing to consider the post-conviction affidavit of a juror claiming the verdict was not unanimous. Finding no error, we affirm.

On November 3, 2012, Deputy Baxter of the Forsyth County Sheriff's Office initiated a stop of a vehicle driven by Gajendra Muthu on Highway 400 northbound in Forsyth County after observing the vehicle fail to maintain its lane. When he approached Muthu, Deputy Baxter observed that he had bloodshot eyes, and detected a faint odor of alcohol. After Muthu had been stopped, Deputy Maddox of the DUI Task Force arrived and took over the investigation.

Deputy Maddox noted that Muthu had bloodshot eyes and also detected a faint odor of alcohol. Deputy Maddox inquired whether Muthu had any medical problems, and Muthu replied that he did not. Deputy Maddox asked Muthu to step out of the vehicle and, after asking a few more questions, the deputy conducted a series of field sobriety tests on Muthu. After administering the field sobriety tests, Deputy Maddox placed Muthu under arrest for driving under the influence to the extent that he was a less safe driver. Deputy Maddox then proceeded to read to Muthu the Georgia Implied Consent warning and requested that Muthu submit to a state-administered breath test. After hearing the implied consent warning twice, Muthu consented to taking the state-administered test. Deputy Maddox took Muthu to the Forsyth County jail to administer the test. At the jail, Deputy Maddox obtained two breath samples

from Muthu, the first sample indicated a blood-alcohol concentration of .103 and the second indicated a blood-alcohol concentration of .098.

Muthu was charged with driving under the influence of alcohol per se, in violation of OCGA § 40-6-391(a) (5); driving under the influence of alcohol-less safe, in violation of OCGA § 40-6-391(a) (1); and failure to maintain lane, in violation of OCGA §§ 40-6-48 and 40-6-1. After a jury trial, Muthu was found guilty on all three counts in the State Court of Forsyth County. Muthu filed a motion for a new trial, which the trial court denied. This appeal followed.

1. In his first enumeration of error, Muthu argues that the trial court violated OCGA § 17-8-57 when it commented on the credibility of one of Muthu's expert witnesses. This contention is without merit.

OCGA § 17-8-57 provides:

(a)(1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused. . . . (c) Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.

3

Violations of OCGA § 17-8-57 are "subject to a sort of 'super-plain error' review; not only may they be raised on appeal without any objection at trial, but, if sustained, they automatically result in reversal without consideration of whether the error caused any actual prejudice." *Freeman v. State*, 295 Ga. 820, 822 (2) (764 SE2d 390) (2014) (citation and punctuation omitted); see also *Wells v. State*, 295 Ga. 161, 167 (3) (758 SE2d 598) (2014); *Murphy v. State*, 290 Ga. 459, 460 (2) (722 SE2d 51) (2012).

During the direct examination of M.M., one of Muthu's witnesses, whom the trial court had recognized as an expert in standardized field sobriety, forensic breath alcohol testing, and the Intoxilyzer 5000, the trial court stated the following in a ruling on an objection by the State: "So to the extent you are asking him a medical–to testify as to a medical condition, I don't think he is competent to testify to that." Muthu contends that this statement improperly conveyed the Court's opinion to the jury regarding the credibility of Muthu's expert, and thus violated OCGA § 17-8-57.

We have held that "[a] ruling by the court on a point of law is not an expression of opinion; neither are remarks by the court explaining the court's rulings. Quite simply, OCGA § 17-8-57 is not violated by the remarks of the trial court when giving reasons for a ruling." *Artis v. State*, 299 Ga. App. 287, 290 (2) (682 SE2d 375) (2009) (punctuation, citation, and footnote omitted); see also *Rogers v. State*, 294 Ga. App.

4

195, 196 (1) (670 SE2d 106) (2008); *Norris v. State*, 240 Ga. App. 231 (523 SE2d 80) (1999).

Here, the comment which is challenged does not constitute a statement of opinion as to whether a fact at issue has been proved, the credibility of Muthu's expert, or as to Muthu's guilt. See OCGA § 17-8-57. The trial court made the statement in the context of ruling on an objection. A closer examination of the context reveals the trial court was not commenting on the credibility of Muthu's expert. Immediately before the court made the remark at issue the court stated "this witness can't testify to medical issues related to a particular person. This witness can testify to issues relating to breath testing equipment and how it is affected by various things including alcohol in the oral cavity."

Thus, the trial court was merely explaining its ruling as to what the witness was competent to testify to in his capacity as an expert. "Remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence." *Corley v. State*, 192 Ga. App. 35, 36 (3) (383 SE2d 586) (1989) (citation and punctuation omitted). Because the trial court was not commenting on the credibility of the witness, but only on what he was competent to testify to in his capacity as an expert witness, the trial court did not violate OCGA § 17-8-57.

5

2. In his second enumeration of error, Muthu alleges the trial court erred when it restricted his expert witness from testifying that acid reflux disease[1] could render a breath test result unreliable, and so deprived Muthu from introducing testimony to support his primary defense.

"The admissibility of expert testimony is a matter within the trial court's sound discretion. We will not reverse the trial court's ruling on such evidence absent an abuse of that discretion." *Lott v. State*, 281 Ga. App. 373, 375 (3) (636 SE2d 102) (2006) (citation and punctuation omitted).

Viewed in this light, the evidence shows that the trial court qualified M.M. as an expert in standardized field sobriety, forensic breath alcohol testing, and the Intoxilyzer 5000. M.M. was asked: "If a person had GERD and the lower sphincter allowed stomach contents into the esophagus, can that cause an affect on the breath test?" The State objected, and the trial court ruled, "Well, but this witness is not being qualified to testify to medical matters. He is qualified to testify as to the breath testing machines . . . this witness can't testify to medical issues related to a particular

---

[1] Gastroesophageal reflux (GER), is commonly referred to as acid reflux, while Gastroesophageal reflux disease (GERD) is a long-lasting and more serious form of G E R . S e e http://www.niddk.nih.gov/health-information/health-topics/digestive-diseases/ger-and-gerd-in-adults/Pages/overview.aspx

person." Muthu argues that his primary defense was that he had an acid reflux condition which made the breath test results unreliable, and by limiting the expert's testimony in this way the court prevented him from presenting this defense. However, this contention is not supported by the record.

The trial court permitted C.A., Muthu's first expert, a physician certified in gastroenterology, to testify that acid reflux can cause the contents of an afflicted persons's stomach to enter the esophagus. The trial court also allowed M.M. to testify about what a "mouth-alcohol condition" was, how acid reflux might bring about such a condition, and how a "mouth-alcohol condition" could affect the results of a Breathalyzer test. Thus, the trial court did permit testimony supporting Muthu's defense. The testimony by M.M. that was not permitted concerned how a particular medical condition might affect a breath test, when there was no evidence that Muthu had that condition on the date he was tested.

In explaining its decision to sustain the objection, the trial court stated: "It's not in evidence that he [Muthu] was experiencing GERD [acid reflux] at the time that this test was taken . . . [s]o . . . asking him to answer that question is asking him to assume facts that are not in evidence."

7

The trial court did not prevent Muthu from presenting his defense. Rather, the court prohibited him from introducing testimony about matters outside the scope of the witness' expertise, or about facts not in evidence. "For an expert to give his opinion based upon a certain state of facts, those facts must be supported by evidence admitted into the record." *Columbus v. State*, 270 Ga. 658, 666 (5) (513 SE2d 498) (1999). We find no abuse of discretion.

3. In his final enumeration of error, Muthu contends the trial court erred when after the jury announced that it was deadlocked as to one count, it failed to declare a mistrial, it read the *Allen* charge *Allen v. United States* 164 U.S. 492 (17 SCt 154, 41 LEd 528) (1896), and it failed to consider the post-conviction affidavit of a juror in which the juror averred that the verdict was not unanimous.

(a). First we consider Muthu's contention that the trial court erred by failing to declare a mistrial. After deliberating for sometime, the jury twice returned the question "Do we have to agree on all counts or can we be deadlocked on one?" Muthu moved for a mistrial, asserting that the jury appeared to be deadlocked. The trial court denied the motion for a mistrial, and elected to give an *Allen* charge first. "The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the

8

preservation of the right to a fair trial." *Evans v. State*, 328 Ga. App. 16, 19 (3) (761 SE2d 443) (2014); see also *Jackson v. State*, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013); *Norwood v. State*, 252 Ga. 292, 294 (3) (313 SE2d 98) (1984).

Here, the trial court considered granting a mistrial as to the count the jury was deadlocked on, but chose instead to give an *Allen* charge. After receiving the *Allen* charge, the jury continued deliberating and returned a unanimous verdict on all counts. Thus, because Muthu fails to make a showing that declaring a mistrial was essential to preserve his right to a fair trial, we cannot say the trial court abused its discretion in refusing to grant a mistrial.

(b). Next we consider Muthu's argument that the trial court erred by giving an *Allen* charge.

> When a jury reports difficulty in reaching a unanimous verdict, whether to give an *Allen* charge is committed to the sound discretion of the trial court, and we review the decision to give such a charge only for an abuse of discretion. We have explained before that the giving of an *Allen* charge amounts to an abuse of discretion when the terms of the charge itself, or the circumstances in which it is given, are coercive, "so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors."

*Contreras v. State*, 314 Ga. App. 825, 826 (2) (726 SE2d 107) (2012) (citations and punctuation omitted); see *Johnson v. State*, 278 Ga. 136, 138 (4) (598 SE2d 502) (2004). In this case the jury twice informed the trial court that it was deadlocked on one count. After the trial court was informed a second time of the deadlock, it elected to give the *Allen* charge.

Muthu contends that the circumstances of this case rendered the *Allen* charge coercive, and thus the trial court abused its discretion. We disagree. After the jury indicated it was deadlocked as to one count the court was "required to make its own determination as to whether further deliberations were in order." *Contreras*. at 827. After sending the first note about being deadlocked, the jury continued deliberations, which is evidenced by its subsequent question concerning specific testimony given at trial. After further deliberations, the jury again returned a note stating it was deadlocked as to one count. In those circumstances, it was not an abuse of discretion to give an Allen charge and require the jury to continue deliberating. See id.; see also *Sears v. State*, 270 Ga. 834, 838 (1) (514 SE2d 426) (1999) (where jury first indicated it was deadlocked after six hours of deliberation, and announced it was deadlocked again after another three hours, the trial court did not abuse its discretion in requiring the jury to deliberate further).

10

(c). Muthu's final contention is that the trial court erred when it refused to consider the post-conviction affidavit of a juror stating that the verdict was not unanimous. At the hearing on his motion for new trial, Muthu sought to introduce the testimony of P.H., who had served as a juror during his trial. The trial court determined that the juror's testimony and affidavit would amount to an impeachment of the verdict by a juror. Accordingly, the trial court did not permit P.H. to testify, nor did it consider her affidavit.

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify by affidavit or otherwise nor shall a juror's statements be received in evidence as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the jury deliberations or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith; provided, however, that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the juror's attention, whether any outside influence was improperly brought to bear upon any juror, or whether there was a mistake in entering the verdict onto the verdict form.

OCGA § 24-6-606 (b). Here, neither Muthu nor P.H.'s affidavit alleged that any extraneous prejudicial information was improperly brought to P.H.'s attention, that

11

any outside influence was improperly brought to bear upon P.H., or that there was an error in entering the verdict on the verdict form. Instead P.H.'s affidavit addressed the deliberations amongst the jurors. This evidence is explicitly excluded by the plain language of OCGA § 24-6-606 (b). Therefore, the trial court did not err when it refused to consider the affidavit of P.H.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*