306 Ga. 412
FINAL COPY

S19A0509.  RHYNES v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Gregory Adrian Rhynes appeals his conviction for the malice murder of Michael Holmes, contending that the trial court erred by partially denying his motion to suppress all statements he made to police during an interview on December 11, 2015.[1] For the reasons set forth below, we affirm.

1. In the light most favorable to the verdict, the record shows that, at approximately 8:00 a.m. on December 9, 2015, David Foreman was helping his cousin, Holmes, move out of his apartment. As the two were packing Holmes's belongings into

---

[1] On March 2, 2016, Rhynes was indicted for malice murder and felony murder predicated on aggravated assault. Following a jury trial ending on November 3, 2016, Rhynes was found guilty on both counts. The trial court sentenced Rhynes to life imprisonment for malice murder, and the conviction for felony murder was vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). Rhynes filed a motion for new trial on November 9, 2016, and amended it on April 30, 2018, after obtaining new counsel. The trial court denied the motion on September 17, 2018. Thereafter, Rhynes filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the April 2019 term of this Court.

Foreman's vehicle, Rhynes approached them from around the side of an adjacent apartment building. Rhynes asked, "What's up now, ni\*\*er?" and began shooting at Holmes. Foreman initially fled, but returned shortly after the shooting ended. Holmes was shot eight times, and later died from his wounds. Fifteen .40-caliber shell casings were found at the scene. In addition, a digital scale and a cell phone were found on the ground in the same area between apartment buildings from which the shooter initially emerged. A search of the phone's contents produced both a photograph of Rhynes and a phone number listed as "Mama." That phone number belonged to Rhynes's mother, whom the recovered phone had been used to call on the day that Holmes was shot. On the day following the shooting, Foreman identified Rhynes as the shooter from a photographic lineup. During a subsequent search of Rhynes's residence, law enforcement discovered a pair of sneakers with a bloodstain on top of them. Subsequent testing showed that Holmes's blood was on the sneakers. Rhynes's DNA was also found inside the sneakers.

This evidence was sufficient to enable the jurors to determine beyond a reasonable doubt that Rhynes was guilty of malice murder.[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Before trial, Rhynes filed a motion to suppress all statements he made in a video-recorded interview with police on December 11, 2015, contending that his *Miranda*[3] rights had been violated during questioning. Specifically, Rhynes argues that he was in custody from the moment that the interview began and that he should have been advised of his *Miranda* rights immediately. We disagree.

> "'In reviewing a ruling on the admissibility of a defendant's statements where the facts are disputed, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts.'" *Teasley v. State*, 293 Ga. 758, 762 (3) (749 SE2d 710) (2013) (citation omitted). . . . [In addition,] the reviewing court may "consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility,

---

[2] Rhynes does not challenge the sufficiency of the evidence; however, it is our customary practice in murder cases to review the sufficiency of the evidence even when it has not been raised. See, e.g., *Edwards v. State*, 301 Ga. 822, 824 (1) (804 SE2d 404) (2017).

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

such as facts indisputably discernible from a videotape." *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015) (citation and punctuation omitted). On the other hand, to the extent that legally significant facts were proved by evidence other than the video recording, the trial court as factfinder was entitled to determine the credibility and weight of that other evidence. See *State v. Chulpayev*, 296 Ga. 764, 771 (2), n. 5 (770 SE2d 808) (2015).

*State v. Abbott*, 303 Ga. 297, 299 (1) (812 SE2d 225) (2018).

In general,

*Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary.

(Citations and punctuation omitted.) *Freeman v. State*, 295 Ga. 820, 822-823 (764 SE2d 390) (2014). The decisive factor in this case is the point at which a reasonable person in Rhynes's situation would have perceived he was in custody.

With regard to Rhynes's interview, the trial court found the following pertinent facts based on evidence presented at a *Jackson-Denno*[4] hearing:

Det. Baker testified that, after he contacted Deborah

---

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

4

Grant, [Rhynes's] mother, on December 10th, 2015, he asked her for [Rhynes's] phone number. Grant declined to give Det. Baker her son's contact information, but said she would give her son Det. Baker's phone number. A few minutes later, [Rhynes] called police headquarters and spoke to Det. Allison Nichols. Det. Nichols asked [Rhynes] to come to the station to talk; at some point during the conversation, [Rhynes] mentioned that he knew something about a shooting. [Rhynes] arrived at police headquarters on December 11th, 2015, having driven himself to the station. He was greeted by Det. Nichols and met Det. Baker in the interview room; both detectives participated in the interview of [Rhynes]. For the first two hours of the interview, the atmosphere was calm and fairly relaxed, despite the fact that the officers repeatedly noted the various inconsistencies in [Rhynes's] statements regarding the status of his cell phone and his activities on the morning of the shooting. [Rhynes] was not handcuffed at this point, and notably, Det. Nichols told [Rhynes] that he would be going home that day. However, at approximately 3:55 p.m., around two hours into the recording, the atmosphere grew noticeably more tense as the detectives made [Rhynes] aware of their belief that he was involved in the murder. At 4:05 p.m., Det. Nichols told [Rhynes] that, unless he told them he had a reason to shoot the victim, such as self-defense, then she and Det. Baker were going to "do what we've got to do." Det. Baker then clarified that "do what we've got to do" meant that [Rhynes] would go to jail. Despite these threats, [Rhynes] was again told at 4:19 p.m. that he would be going home. However, after the detectives consulted with other officers, [Rhynes] was advised of his *Miranda* rights, handcuffed, and formally placed under arrest.

Based on these findings, the trial court determined that, for purposes of *Miranda*, Rhynes was not in custody until 4:05 p.m. and was in custody after that point, despite the fact that he was subsequently told that he would be going home that day. As a result, the trial court partially granted Rhynes's motion to suppress, finding that all statements made after 4:05 p.m. were inadmissible, while all earlier statements were admissible.[5]

The testimony at the *Jackson-Denno* hearing and the videotape of Rhynes's interview support the trial court's ruling and show that the trial court's findings of fact and credibility were not clearly erroneous. After detectives contacted Rhynes's mother, Rhynes voluntarily agreed to come to the police station of his own accord after being informed that police "needed to talk with him" and "would appreciate [it] if he came down to police headquarters for an interview." Once at headquarters, Rhynes was interviewed in an unlocked room, and he was never restrained during any part of the

---

[5] After Rhynes received *Miranda* warnings and was placed under arrest, he stopped talking and the questioning ceased.

interview that the trial court ultimately deemed admissible at trial. In addition, police questioned Rhynes in a calm fashion, and he was informed that he would be going home that day. The detectives questioning Rhynes did indicate that he was suspected of being at the scene of the murder and that they were attempting to understand what he might have been doing there, but they never gave Rhynes any indication that he was not free to leave.

In challenging the trial court's ruling, Rhynes's main contention appears to be that he was subject to custodial interrogation because, prior to the start of his interview, police had specific knowledge linking Rhynes to the crime scene, namely Rhynes's cell phone and Foreman's identification of Rhynes. Rhynes argues that, based on this evidence, police must have intended to arrest Rhynes from the start of the interview and must have considered Rhynes to be in their custody. This contention fails.

> In effect, [Rhynes] would have us rule that once a police officer has probable cause to arrest, he must arrest and *Mirandize*. But that is not the law. Whether a police officer focused his unarticulated suspicions upon the individual being questioned is of no consequence for

7

*Miranda* purposes. *Stansbury v. California*, 511 U.S. 318 (114 SCt 1526, 128 LE2d 293) (1994). This is so because *Miranda* was fashioned to redress "'the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions'" when the questioning commenced. Id. [at 323]. "*Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.*" Id. at 325. Thus, the proper inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the police had probable cause to arrest. See id. at 323. See also *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) (1987) (*Miranda* does not apply unless a person is "taken into custody or otherwise deprived of his freedom . . . in some significant way").

(Emphasis supplied.) *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). Here, as discussed above, the evidence supports the trial court's determination that Rhynes was not in custody until 4:05 p.m., and, as such, the trial court did not err in admitting into evidence at trial Rhynes's non-*Mirandized* statements occurring before that point in the interview.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

8

Murder. Chatham Superior Court. Before Judge Freesemann.

*Robert L. Persse*, for appellant.

*Meg E. Heap, District Attorney, Emily C. Puhala, Christine S. Barker, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.