**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**April 22, 2022**

# In the Court of Appeals of Georgia

A22A0042. PICKENS v. THE STATE.

MCFADDEN, Presiding Judge.

After a bench trial at which Geoffrey Craig Pickens represented himself, the trial court found Pickens guilty of aggravated child molestation, aggravated sexual battery, and child molestation. On appeal, Pickens argues that the trial court should have suppressed evidence found in a search of his residence because the warrant authorizing that search was improper. But we find no error in the trial court's determination that there was probable cause to issue the warrant. Pickens also argues that the trial court should have suppressed his custodial statement to law enforcement officers because he had invoked his right to counsel. But the trial court was authorized to find he had not invoked that right. So we affirm.

1. *Search warrant.*

The trial court denied Pickens's motion to suppress evidence found at his residence during the execution of a search pursuant to a warrant. That evidence included photographs and video recordings of Pickens engaging in various sexual acts with the three-year old victim. Pickens argues that the trial court should have suppressed this evidence because the warrant to search his residence was invalid on the ground that the magistrate court lacked probable cause to issue it. We disagree.

"A search warrant will only issue upon facts sufficient to show probable cause that a crime is being committed or has been committed. OCGA § 17-5-21 (a)." *State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009). The propriety of a search warrant is subject to various levels of judicial scrutiny. First, the magistrate court

> determin[es] if probable cause exists [by] mak[ing] a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that . . . evidence of a crime will be found in a particular place.

Id. (citation omitted). Next, the trial court may "examine the issue as a first level of review," according the magistrate judge's decision substantial deference. Id. Finally, the appellate court reviews the search warrant to determine, under the totality of the circumstances, "if the magistrate had a substantial basis for concluding that probable

2

cause existed to issue the search warrant." Id. at 78 (citation and punctuation omitted). The appellate court makes this determination in the context of reviewing the trial court's decision on a motion to suppress the evidence found pursuant to the warrant, applying

> the well-established principles that the trial court's findings as to disputed facts will be upheld unless clearly erroneous and the trial court's application of the law is subject to de novo review, [and] keeping in mind that a magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court.

Id. at 78 (citations and punctuation omitted).

The magistrate court in this case issued the warrant without receiving any oral testimony, so "we focus on the information set forth within the four corners of the [search warrant] affidavit[.]" *Wingate v. State*, 347 Ga. App. 341, 343 (2) (819 SE2d 502) (2018) (citation and punctuation omitted). That affidavit set out the following facts. After Crystal Tatum gave her cell phone to Pickens, photographs and video recordings of child sexual abuse began to appear on Tatum's Google account, which was associated with that phone. Tatum sought advice from her sister-in-law, Deborah

3

Long, providing her with the user name and password for the Google account, and Long contacted law enforcement.

Long described what she had seen on the Google account to the law enforcement officer dispatched to the call. Using the user name and password that Tatum had provided to Long, the responding officer also viewed some of the materials on the account. The officer stated in the search warrant affidavit that he saw on the account a video recording of a man — who he stated he was "later able to verify through jail track photos and [F]acebook photos to be Geoffrey Pickens" — masturbating while stating that he liked molesting very young girls. The officer also stated in the affidavit that he "observed several pictures of very young children nude and in sexually explicit positions" and that he saw a photograph of "a hand that is inserting two fingers into what appears to be a very young child's vagina." The officer stated that there was a nautical star tattoo on the hand in that photograph, and he stated that he later verified from Pickens's Facebook account that "Pickens has a nautical star tattoo on his left hand in the exact spot that you can see [in] the photograph."

The officer stated in the search warrant affidavit that another officer "was able to obtain a Geo tag from a picture that is on the account," which "show[ed] that the picture was taken at [a specified address]."

Finally, the officer stated:

> Based on the information that has been provided to me by Ms. Long, a Federal employee who has no criminal history and has lived continuously in Gwinnett County for over 20 years, along with verifying that the pictures and video exist, confirming that the pictures were taken at [the address associated with the geotag], and verifying through various social media and jail track photographs that Mr. Pickens is the person in the photographs sodomizing the children I feel that probable cause exists for a search of the home for child pornography which based on my training and experience is commonly stored on various forms of digital media storage devices and also in printed photographs.

The magistrate court issued a search warrant for the address identified in the affidavit.

The officer's statements in the warrant affidavit gave the magistrate court a "substantial basis for concluding that probable cause existed to issue the search warrant." *Palmer*, 285 Ga. at 78 (citation and punctuation omitted). But, pointing to subsequent testimony in the case, Pickens asserts that the search warrant affidavit contained material omissions. Specifically, he argues that the affidavit omitted the

5

fact that the affiant officer had not corroborated aspects of the information that Tatum had provided to Long, such as Tatum's reasons for giving Pickens the phone and her assertion that the Google account and phone were hers. And he argues that the affidavit omitted the fact that the specific image containing the geotag did not itself depict child sexual abuse.

Because Pickens contends that the affidavit contained material omissions, we assume that the omitted material was truthful and reexamine the affidavit with that material added to determine whether it provided probable cause to issue a warrant. See *Jones v. State*, 292 Ga. 656, 663 (3) (740 SE2d 590) (2013). Doing so here, we find that "[n]othing in the omitted material detracted from the [evidence establishing probable cause]." *Jackson v. State*, 306 Ga. 706, 715 (4) (a) (832 SE2d 809) (2019).

Even if Tatum's assertions to Long lacked veracity, that does not undermine the fact that the affiant officer himself saw images of child sexual abuse on the Google account, that those images displayed Pickens's face and his distinctive hand tattoo, or that the affiant officer independently confirmed Pickens's identity through means such as social media. Those facts, which were all set forth in the search warrant affidavit, do not depend on Tatum's credibility, and they clearly established probable cause that Pickens had engaged in acts of child sexual abuse.

6

In addition, the omission of the fact that the only photograph containing a geotag did not itself depict abuse does not detract from the probable cause established by the search warrant affidavit. The magistrate court could still conclude from the totality of the circumstances set forth in the affidavit that Pickens lived at the address associated with the geotag, that he likely kept digital media storage devices at his residence, and that those devices likely contained the images of child sexual abuse seen on the Google account. Keeping in mind that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants[,]" *Palmer*, 285 Ga. at 77-78 (citation omitted), we find that, notwithstanding the alleged material omissions related to the geotagged photograph, the affidavit "would have provided the magistrate a sufficient basis to find probable cause to issue [a] search warrant [for Pickens's residence]." *Jones*, 292 Ga. at 665 (3). See *Johnson v. State*, 310 Ga. 685, 697 (5) (853 SE2d 635) (2021) (statement in affidavit that particular address "is the residence of [the defendant]," along with evidence that the defendant had been involved in some robberies, was sufficient "to give the magistrate court probable cause to conclude that items related to the robberies would be found at [that address]").

2. *Custodial statement.*

Pickens argues that the trial court erred in denying his request to suppress an incriminating custodial statement because he had invoked his right to counsel under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). We disagree.

The record shows that, at the start of his custodial interrogation at the police station, Pickens was read his *Miranda* rights and did not invoke his right to counsel at that time. But Pickens argued to the trial court that he invoked that right at two other points: first, at the time of his arrest, before he was taken to the police station, and later, during the course of the custodial interrogation. Rejecting these arguments, the trial court chose to admit the statement.

On appeal, Pickens focuses on only one of these arguments — his claim that he invoked his right to counsel at the time of his arrest. He makes no argument and cites no authority for the proposition that he also invoked his right to counsel during his custodial interrogation.[1] So he has abandoned on appeal any claim of error based on that argument. See *Gregory v. State*, 342 Ga. App. 411, 415 (1) (b) (803 SE2d 367) (2017).

---

[1] Pickens may have chosen not to assert this argument on appeal because he conceded at trial that he had not clearly communicated to the interrogating officer that he wanted to stop and speak with his attorney.

The only evidence that Pickens invoked his right to counsel at the time of his arrest was the testimony of an arresting officer who initially stated, "after I read [Pickens] Miranda, he said he wanted to talk to his attorney." But after the prosecutor pointed out that this testimony was not consistent with the officer's police report, the officer recanted. He testified, "actually, no, I didn't Mirandize him, because I didn't walk him outside. I was inside." He further explained:

> I remember standing inside after getting him in cuffs. Since I was primary, somebody, I don't remember which officer it was, they walked him outside. They took him to the car. I stayed inside and I remember looking around. After seeing some of the items inside the – the room, I went ahead and called our computer folks, crime scene folks, and I didn't Mirandize him. I didn't. I think I was going to, but I got tied up on the upstairs. I think he was put in the back of the car and just transported right then. I don't think there was much – actually, I'm sure of it. He – he was taken downstairs, put in the car, and they pretty much, if I remember, took off with him pretty quickly after that. . . . I didn't Mirandize him, because he was – he was passed back downstairs. I didn't even have time to say anything to him.

When the trial court denied Pickens's request to suppress his statement at trial, she expressly found that the officer had made "a mistake" in his initial testimony on this issue and that the officer "did not give [Pickens] Miranda, and he did not take a

9

statement from [Pickens]." On appeal, Pickens asks us to resolve the contradictions in the officer's testimony differently. But it was for the trial court as factfinder, rather than this court, to determine how to interpret and credit the testimony. See *Rhynes v. State*, 306 Ga. 412, 414 (2) (831 SE2d 831) (2019) ("to the extent that legally significant facts [are] proved by evidence other than [evidence that is uncontradicted and presents no questions of credibility, such as a] video recording, the trial court as factfinder was entitled to determine the credibility and weight of that . . . evidence") (citations omitted). This court's role is to "accept the trial court's factual findings and credibility determinations [on the admissibility of Pickens's custodial statement] unless they are clearly erroneous, [while] independently apply[ing] the law to the facts." Id. (citation and punctuation omitted). The trial court did not clearly err in accepting the officer's explanation for his earlier testimony and concluding that Pickens had *not* invoked his right to counsel at the time of his arrest. See *State v. Gates*, 308 Ga. 238, 255 (3) (a) (i) n. 16 (840 SE2d 437) (2020) (trial court, as factfinder, is empowered to accept or reject a party's characterization of ambiguous evidence).

*Judgment affirmed. Gobeil and Pinson, JJ., concur*.

10